No. 63,445

STATE OF KANSAS, *Appellee,* v. CRAIG S. WILSON, *Appellant.*

(795 P.2d 336)

Opinion filed July 13, 1990.

*Steven R. Zinn,* deputy appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Craig S. Wilson,* appellant, was on the brief pro se.

*Mary Murguia,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The defendant, Craig S. Wilson, appeals his jury convictions of two counts of aggravated criminal sodomy pursuant to K.S.A. 21-3506.

The issues for review relate to: (1) the adequacy of the information and of the jury instructions pertaining to aggravated criminal sodomy; (2) the failure of the trial court to instruct under K.S.A. 60-455 on other crimes evidence; and (3) the admission of a social worker's testimony, which Wilson contends vouched for the alleged victim's credibility.

We find no error and affirm.

## Facts

In July 1984, Craig S. Wilson began dating Levoria B. Levoria's son, S.D., was one year old at the time. Wilson moved in with Levoria and they began a sometimes stormy three-year relationship; during this time, S.D. was in his mother's custody. Wilson testified that Levoria trained S.D. to blame Wilson for problems which developed in their home.

In early October of 1987, Levoria was arrested for various traffic violations and was held in the Wyandotte County Jail for most of that month. S.D. continued to live with Wilson, either at Levoria's apartment or in the home of Wilson's sister.

At the time of trial, S.D. was five years old. S.D. testified that Wilson put his penis into S.D.'s anus. With the use of anatomically correct dolls, the child showed how Wilson's penis was inserted into S.D.'s anus. S.D. stated this occurred "bunches" of times and that it hurt. S.D. testified that Wilson hit him in the head with his hand and with a belt.

S.D.'s foster mother testified that S.D. would wake up crying because of bad dreams about Wilson. S.D. told her how Wilson would beat him with an extension cord and put his penis into S.D.'s anus, causing S.D.'s anus to bleed.

Vanilla B., S.D.'s paternal grandmother, testified that while Levoria was still in jail she received a call from Levoria. Levoria requested that the grandmother take S.D. from Wilson since S.D. had told Levoria, during a telephone conversation, that Wilson had been "messing" with him. Vanilla B. stated that Levoria had also told her of Levoria's suspicion that Wilson had sexually

abused S.D. before Levoria went to jail. Vanilla B. stated that S.D. told her that Wilson had put grease on S.D.'s bottom and had messed with him (S.D.) with his (Wilson's) penis.

Levoria testified that, after she was released from jail, S.D. told her that a little boy had been "messing with his bottom" and that she had ·confronted that child's mother regarding the incident. At trial, S.D. denied telling his mother that some little boys had messed with his bottom, only that they had messed with his bike.

Levoria testified that the only thing S.D. had said about Wilson was that "he whooped him once." She denied that, during a telephone conversation with S.D. while she was in jail, S.D. had made allegations against Wilson of sexual abuse. She stated that, because she was angry with Wilson and wanted him to find out what it was like to be in jail, she made a statement to the police in November 1987 alleging that Wilson had sexually abused S.D. In that statement, Levoria indicated that, upon her release from jail, S.D. told her that Wilson had been forcing S.D. to engage in sexual conduct. She also claimed that she confronted Wilson regarding that allegation and that Wilson denied it, but glanced threateningly at S.D. while doing so.

Earlier in November 1987, Levoria had taken S.D. to the emergency room at the University of Kansas Medical Center.

Jan Reynolds, a sexual abuse social worker at the medical center, testified that she received information from S.D., Levoria, and Vanilla B. regarding various types of sexual conduct which Wilson was alleged to have engaged in with S.D. Reynolds stated that Levoria directed S.D. to tell her "what he [Wilson] stuck into him [S.D.]."

S.D. was then examined by Barbara Sniffen, M.D. Dr. Sniffen was informed by Levoria that Wilson had placed his penis in S.D.'s bottom. Her examination revealed no signs of lacerations or other recent trauma.

While at the medical center, both Levoria and S.D. were interviewed by Kansas City Police Officer Herman Smithey. Officer Smithey testified that while Levoria told him that Wilson had touched S.D.'s penis, forced S.D. to touch and kiss Wilson's penis, and placed his penis into S.D.'s bottom, S.D. only stated

to him that Wilson had touched his penis and stomach and had struck him in the face with his hand.

Through the use of a colposcope, Dr. Joyce Adams, a pediatrician at the medical center, detected a one centimeter long scar in S.D.'s anal area. The colposcope is a microscope that magnifies an area fifteen times and allows careful examination of tissue. Dr. Adams estimated that the injury was two to three weeks old. She stated that the injury was consistent with anal penetration by a "penile size object," and consistent with the history given by S.D. On cross-examination, she admitted that the scar could have resulted from penetration by an inanimate object, but that it was unlikely that the scar was caused by a finger unless considerable force had been used.

Near the end of November 1987, Levoria was admitted to the psychiatric unit at the medical center. Dr. Robin Barr testified that Levoria had been committed by the court and was psychotic during the entire time of her hospitalization.

Dr. Elizabeth Pennick, a clinical psychologist at the medical center, testified that Levoria was not coherent and was nervous. During an interview with Dr. Pennick, Levoria alluded to the fact that her boyfriend had abused her son, that this had frightened her a great deal, and that she believed her boyfriend had control over her thinking.

Dr. Pennick testified that despite Levoria's psychotic state she did show concern for her son and that a few weeks earlier Levoria would have been able to respond appropriately regarding a report of sexual abuse of her son. However, Dr. Pennick testified that because of this same disorganized mental state it is implausible that Levoria would have been mentally capable of planning a complicated plot of revenge.

Levoria left the medical center without authorization in December 1987 and was subsequently picked up and taken to Osawatomie State Hospital.

In April of 1988, about three months prior to trial, Levoria told Wilson's attorney that Wilson had not sexually abused S.D. Levoria stated that she had forced S.D. to say Wilson had molested him because she was mad at Wilson for leaving her in jail and for not posting bond. She signed an affidavit to that effect which the attorney had prepared.

At trial, Levoria testified that she still loved Wilson and wanted to be with him again. She admitted that after learning of S.D.'s anal scar, she began coaching S.D. to allege that Wilson had messed with S.D.'s bottom.

A clinical social worker with the Wyandot Mental Health Center testified that, using age appropriate language, S.D. gave a detailed description of alleged sexual abuse by Wilson, including claims that Wilson would squeeze S.D.'s penis "tight" and that Wilson would sometimes put hair grease on his own penis. According to the social worker, S.D. said, "He put my hands behind my back and put a chain on it and he made me bleed in my booboo because he put his dick in it." S.D. used anatomical drawings to describe Wilson's genital response and stated that when he resisted Wilson's sexual advances, Wilson called S.D. names and told him that he would not receive any food.

Wilson testified on his own behalf. He stated that Levoria was angry with him because he had let her stay in jail. When Levoria was released from jail, she accused him of infidelity and "kicked" him out of her apartment. The next time he spoke with her, she told him she was going to call the police and report that he had engaged in a sexual act with S.D. Wilson described his efforts toward caring for S.D. while Levoria was in jail and emphatically denied engaging in sexual conduct with S.D. Wilson also denied requesting Levoria to change her story accusing him of sexual abuse.

### The Information

Wilson was charged with two counts of aggravated criminal sodomy. Count one of the information read as follows:

"Between October 6, 1987, and October 31, 1987, one Craig Wilson did unlawfully, feloniously and willfully commit an act of Sodomy, to-wit: *anal sex* with a child, to-wit: [S.C.D.] (DOB: 3-23-83) who is not married to the offender and who is under 16 years of age; in violation of K.S.A. 21-3506." (Emphasis added.)

Count two, alleging a separate instance of aggravated criminal sodomy during the same time period, also used the phrase "anal sex."

Wilson contends the use of the term "anal sex" in the information without the additional allegation of penetration renders

the information jurisdictionally defective. He argues that the term should be "anal copulation." Wilson contends that "anal sex" is possible without penetration, an essential element of sodomy. Therefore, he claims, the information fails to allege the offense for which he was convicted.

The definition of sodomy (K.S.A. 21-3501[2]), as it pertains to this case, requires proof either that Wilson penetrated S.D.'s anus with his penis or that he penetrated S.D.'s anus with an object or a part of Wilson's body other than his penis.

Wilson argues "anal sex" as alleged in the information (1) does not allege penetration and (2) could include an act of fondling or touching S.D.'s anal area without penetration having occurred.

The State argues that the information should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied. The State also argues: (1) the information was sufficient to give Wilson notice of the charges against him; (2) Wilson was not misled; (3) there was no prejudice; (4) Wilson should have moved for a bill of particulars as authorized by K.S.A. 22-3201(5); and (5) by proceeding to trial on the information, Wilson waived his right to require the State to amend the information or to file a bill of particulars. Further, the State notes Wilson made no attack on the information prior to his conviction.

In *State v. Jones*, 242 Kan. 385, 393, 748 P.2d 839 (1988), we stated:

"Sufficiency of the indictment or information is to be measured by whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and by whether it is specific enough to make a plea of double jeopardy possible."

In *State v. Micheaux*, 242 Kan. 192, 199, 747 P.2d 784 (1987), we observed: "While an information may be insufficient if it fails to allege an essential element of the offense, nevertheless, an information should be read in its entirety, construed accordingly to common sense, and interpreted to include facts which are necessarily implied." See *State v. Wade*, 244 Kan. 136, 141, 766 P.2d 811 (1989).

In *State v. Bishop*, 240 Kan. 647, 652, 732 P.2d 765 (1987), this court said: "[A]n information which charges an offense in the language of the statute is sufficient [citations omitted].

. . . [H]owever, . . . the exact statutory words need not be used in the information if the meaning is clear."

We apply the "common sense" construction concept of *Wade* and *Micheaux* in holding that the information charging "anal sex" rather than "anal copulation" sufficiently alleged penetration of the anus by the male sex organ and was not jurisdictionally defective.

### PIK Crim. 2d 57.08—Instruction on Aggravated Criminal Sodomy

Wilson contends that there is another reason why the use of the phrases "anal sex" in the information and "anal sexual relations" in the jury instructions are defects which require reversal of his convictions of both counts of aggravated criminal sodomy.

K.S.A. 21-3506, as relevant to this case, defines aggravated criminal sodomy as: "(a) [s]odomy with a child who is not married to the offender and who is under 16 years of age."

K.S.A. 21-3501(2) provides: "(2) 'Sodomy' means oral or anal copulation . . . or any penetration of the anal opening by any body part or object. Any penetration, however slight, is sufficient to constitute sodomy."

Jury instructions Nos. 5 and 6 both state that the following claims must be proved to establish the charge of aggravated criminal sodomy:

"1) That the defendant had *anal sexual relations* with [S.C.D.], who was not his wife;

"2) That there was actual penetration;

"3) That the victim was a child under the age of 16 years; and

"4) That this act occurred between October 6, 1987, and October 31, 1987, in Wyandotte County, Kansas.

"Any penetration, however slight, is sufficient." (Emphasis added.)

Wilson argues it is unclear from the terms "anal sex" and "anal sexual relations" whether he was charged with sodomy by anal copulation with S.D. or sodomy by penetration of the anal opening by any object or body part other than the male sex organ. Wilson argues that for his conviction to stand there must have been sufficient evidence for a rational factfinder to find him guilty beyond a reasonable doubt of *both* anal copulation and penetration of the anal opening by a body part or object. Wilson contends that while there was considerable evidence at trial of anal cop-

ulation, there was no evidence of penetration by an object or by a body part other than the male sex organ and, thus, his convictions on both counts must be reversed.

The State responds to Wilson's argument by asserting that Wilson's failure to object to the definiteness or certainty of an information prior to submission of the case to the jury waives further objections where the information was sufficient to charge a crime. Further, the State contends that since Wilson did not object to the jury instructions, this court's review is limited to a determination of whether the instructions were clearly erroneous. The State acknowledges there was insufficient evidence to show sodomy by penetration by an object or body part other than the male sex organ, but claims there was strong and clear evidence of sodomy by anal copulation. As a result, the State contends, it is clear Wilson was charged with, and the State had to prove, sodomy by anal copulation only.

As we noted above, the phrase "anal sex" used in the information means penetration of the anus by the male sex organ. Thus, we now consider Wilson's claim as it pertains to the jury instructions only.

The State cites as support for its argument the comment to PIK Crim. 2d 57.07:

"The word 'copulation' was not included in the elements of criminal sodomy for the reason it means sexual intercourse. Instead, the term 'sexual relations' was substituted to the end that the jury would not be confused. Sexual intercourse was not used for the word copulation as it has statutory reference to other sexual offenses."

The State argues that "anal sexual relations" is the equivalent of "penetration of the anus by the male sex organ," and consequently the jury was instructed as to what the evidence showed, *viz.*, aggravated criminal sodomy based only on anal penetration by the male sex organ.

No party may assign as error the giving or failure to give an instruction unless, before the jury retires to consider its verdict, an objection stating the specific grounds is entered. Absent such objection, this court's review is limited to a determination of whether the instruction was clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous when a reviewing court reaches a firm conviction that, if the trial error had not occurred, there

was a real possibility that the jury would have returned a different verdict. *State v. Patterson,* 243 Kan. 262, 268, 755 P.2d 551 (1988).

Since Wilson did not object to the jury instructions which used the phrase "anal sexual relations," our review is limited to a determination of whether the instruction was clearly erroneous. After reviewing the record, it cannot be said the jury would have returned a different verdict if the phrase "anal copulation" had been used in place of the term "anal sexual relations" in the instructions.

We approve the use of PIK Crim. 2d 57.08 in this case. We find no error in the use of the phrase "anal sexual relations" in place of the term "anal copulation" in the pattern instruction on aggravated criminal sodomy.

Wilson's argument that the vagueness of the instruction and of the charge makes it impossible to determine which of the two types of sodomy he stands convicted of is without merit.

### K.S.A. 60-455—Other Crimes Evidence

Wilson contends that on two occasions during the presentation of the State's case, evidence was introduced of an alleged prior incident in which Wilson supposedly molested a three-year-old girl. The prosecutor asked Levoria if she remembered telling the social worker that she knew "Craig [Wilson] had maybe molested somebody else but you didn't feel Craig would molest a boy." Levoria did not remember. Later in the trial, a social worker who interviewed Levoria and Vanilla B. when they first brought S.D. to the medical center stated that Vanilla B. told her "that Craig had molested a three-year-old prior to this incident."

Wilson argues that, even though there was no objection to the introduction of these statements, this evidence was still subject to the strict limitations on the admission and use of K.S.A. 60-455 evidence. He reasons that the trial court's failure to give a limiting instruction was reversible error.

The prosecutor's reference to an alleged prior statement to the social worker by Levoria and Levoria's response arose in the following line of inquiry by the prosecutor:

"Q. November 2nd. Do you remember what you—
"A. I don't know the doctor's name.

"Q. Okay. Do you remember talking to the social worker?
"A. Yeah.
"Q. Okay; and do you remember telling her what [S.D.] had told you?
"A. Yeah. I remember telling him.
"Q. Okay. Do you remember telling her that you knew that Craig [Wilson] had maybe molested somebody else but you didn't feel Craig would molest a boy? Do you remember telling her that?
"A. (Nod no).
"Q. You don't remember telling her that?
"A. No. Hu-huh.
"Q. Okay. Do you remember telling her how [S.D.] was acting those nights that you were—or those days and nights that you were home since you'd been home from jail. Do you remember telling her how [S.D.] was acting?
"A. I told her he was crying in his sleep.
"Q. Okay. And did you—you remember telling her that [S.D.] was acting weird lately, that he was waking up in the night screaming?
"A. Yeah. I told her he was crying and screaming in his sleep. He'd wake up and start crying."

There was no objection by the defense to the prosecutor's question. No further reference to this prior statement was addressed to Levoria.

The social worker's testimony with regard to this matter was:

"Q. Was there anything else? What else did you do? Did you talk to the mom anymore? Was there anyone else you talked to?
"A. Then I talked to [S.D.] and mom was in there with me when I was talking with him because he was very difficult to understand; and at first, mom was telling me or I started talking with [S.D.] and I was building up trying to get information what had really happened with him and Craig [Wilson]. He told me that Craig had touched his tummy and his ding-ding. [S.D.] touched his stomach and then I asked [S.D.] what his ding-ding was and he pointed toward his groin area and then I talked with the grandmother, paternal grandmother, Vanilla [B.], and she gave me some more information that [S.D.] had told her that he had sucked on Craig's pee hole. Mrs. [B.] also told me that Craig had molested a three-year-old prior to this incident.
"Q. What else did [S.D.] tell you, if anything? Did [S.D.] tell you anything else?
"A. That was pretty much it."

The prosecutor's question about what the social worker did and who she talked to were proper questions. The prosecutor made no inquiry about any prior conduct by Wilson. She made no reference to her earlier question to Levoria or to Levoria's response. The social worker gave a lengthy answer to a proper question. Her final statement of this answer was unsolicited by

the prosecutor. The statement was unforeseeable and unresponsive. Defense counsel did not object. The prosecutor made no comment, thereafter, on this statement, but immediately changed the subject and inquired about what S.D. had related to the social worker.

Other than the question to Levoria and her response and the social worker's unsolicited and unforeseeable statement, no additional reference was made to the other alleged incident.

The trial court did not give a limiting instruction. Counsel for Wilson did not request that a limiting instruction be given. Generally, in every case where evidence of other crimes is admissible solely under the authority of K.S.A. 60-455, the trial court should give an instruction limiting the purpose for which the evidence of the similar offenses is to be considered. Under such circumstances the failure of the trial court to give a limiting instruction, regardless of request, is of such a prejudicial nature as to require the granting of a new trial. *State v. Whitehead,* 226 Kan. 719, Syl. ¶ 2, 602 P.2d 1263 (1979).

When, however, evidence is admissible independent of K.S.A. 60-455, the failure to give a limiting instruction is not error.

K.S.A. 60-420 provides:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of imparing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

In this case, the victim's mother, Levoria, was a turncoat witness. She originally gave a statement to the police supporting S.D. and the allegations of sexual abuse. Subsequently, she filed an affidavit saying she had lied and that she had told the child to lie because she was mad at Wilson.

The State's question to Levoria and her answer were properly admissible under K.S.A. 60-420.

The trial court did not err in failing to give a limiting instruction required for K.S.A. 60-455 other crimes evidence.

### Expert Testimony—Passing on the Victim's Credibility

Wilson contends the social worker who had counseled S.D. impermissibly vouched for S.D.'s credibility.

Delita Yates, a sex abuse therapist, began counseling S.D. in November 1987. She had seen him eleven times prior to Wilson's trial.

At trial, the prosecutor asked Yates whether it was possible for a child to have been told a couple of times to say something and to be as consistent as S.D. had been:

"Q. It seems like you've talked to a lot of children and a lot of families regarding sexual abuse. Is it possible for someone to have been fed information or told to say something maybe once or twice or even a couple of times and to be as consistent as maybe [S.D.] has been?

"A. I think it's possible that a child could be told to say something, yes, because in—I mean, anything is really possible. What I look at—I think I mentioned a minute ago that the child has a candid presentation one would tend to think, well may have been—maybe they've been coached in some ways, but you look. [S.D.] has been through so many ups and downs over the last period: change in environment, change of people, undergoing a lot of stress, and that he's still coming back with core details, adding to what has happened in the way that children generally do when they disclose information. *It would be highly unlikely, with the details he's discussed again over time, the demonstrations he's shown and that in combination with the behavioral indicators that I just mentioned . . . a coached kid just can't come up with detail that matches vocabulary, sentence construction, consistency over time and it would be highly unlikely for that to happen in a child who's coached."* (Emphasis added.)

Wilson contends the comment, "[I]t would be highly unlikely for that to happen in a child who's coached," went beyond what was permissible because it amounted to an opinion that S.D. was telling the truth.

No objection to this testimony was raised at trial. The issue was first presented to the trial court at the hearing on Wilson's motion for new trial in August 1988, more than one month after the trial. The erroneous admission of evidence may not be raised as an issue on appeal unless there appears of record a timely objection so stated as to make clear the specific ground of the objection. K.S.A. 60-404. Wilson may not raise this issue on appeal.

Wilson relies on *State v. Jackson,* 239 Kan. 463, 721 P.2d 232 (1986). In *Jackson,* a case in which a timely objection was made, we held that an expert's opinion in a proper case is admissible up to the point where an expression of opinion would require

the expert to pass upon the credibility of witnesses or the weight of disputed evidence. 239 Kan. 463, Syl. ¶ 8.

A review of the record in the instant case indicates that Yates did not testify that S.D. was telling the truth, that S.D. had been sodomized, or that Yates believed S.D. Yates did not testify that S.D. was or was not coached or that Wilson committed the crimes with which he was charged. Yates did not vouch for S.D.'s credibility.

There was no violation of the rule set forth in *Jackson.*

The trial court did not err in denying Wilson's motion for new trial.

Wilson has also filed a pro se brief of four pages in which he asks us to consider claims that: (1) the evidence was insufficient to support his convictions; (2) trial counsel was ineffective; (3) the jury did not deliberate long enough to have followed the instructions of the trial court and to have considered the evidence in the case; (4) he was given the maximum sentence as punishment for going to trial rather than pleading guilty; and (5) the appellate defender's assignment of error for review on appeal was too limited.

Although Wilson does not fully detail these issues, we have carefully reviewed his pro se brief and the record. The record does not support Wilson's pro se claims.

Affirmed.