No. 45,979

MOLLIE CARTER, *Appellant,* v. FOOD CENTER, INC., d/b/a RED-BUD SUPER MARKETS and BOOGAART, INC., formerly known as SCRIBNER, BOOGAART, INC., *Appellees.*

(485 P. 2d 306)

Opinion filed May 15, 1971.

*Michael R. Elson,* of Sowers, Sowers, Carson and Johnston, of Wichita, argued the cause, and *James P. Johnston,* of the same firm, was on the brief for the appellant.

*James Z. Hernandez,* of McDonald, Tinker, Skaer, Quinn and Herrington, of Wichita, argued the cause, and *Lee H. Woodard,* of the same firm and *John E. Rees,* of Fleeson, Gooing, Coulson and Kitch, of Wichita, were on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: The action in district court was one for damages for personal injuries resulting from a fall in defendants' supermarket. In a jury trial at the conclusion of plaintiff's evidence the court sustained defendants' motion for directed verdict. Plaintiff has appealed from that order.

The single error presented on appeal is the trial court's action in removing the case from jury consideration.

Plaintiff's evidence on the liability issue consisted of her own testimony and that of the operator of a janitorial service and an expert testing engineer. We briefly summarize that evidence.

On February 19, 1968, plaintiff was the proprietor of a rest home. According to her testimony, at about 9:00 a. m. she entered defend-

ants' supermarket at Twenty-first and Grove streets in Wichita for the purpose of buying fish. She walked around the cash registers intending to look at the contents of the frozen food counter but when she got to that aisle she saw a gentleman standing behind the meat counter at the far end of the aisle. She then decided to ask him about fish and started toward him. As she was walking along the aisle her right foot hit an object and it was just like she had stepped on a roller skate. Her right foot went straight out and she fell in a twisted manner, striking her head on the frozen food counter. After first aid was rendered she asked what she had slipped on. The butcher she had seen at the meat counter, who had come to her after the fall, picked up an object and said, "It is a piece of hard gum". Plaintiff saw the gum at the time but did not see any other foreign material or objects in the immediate area where she fell. At the time she stepped on the gum it had not been cut and was a solid piece, light on the bottom side and dark on the top. Plaintiff weighed 240 pounds at this time.

A Mr. Steele testified he and two partners operate a janitorial service in Wichita and under an oral agreement, for a flat weekly fee, perform floor cleaning services for defendants' eight supermarkets in Wichita, including the one in question. According to their schedule they worked in each store three or four times per week, scrubbing and buffing the floor on each occasion and waxing it when they thought it necessary. They performed this work after the store closed each night. Store hours were from 6:00 a.m. to midnight daily. Defendants' employees at each store were supposed to sweep the floor just prior to closing each night. The witness believed the store employees revolted against this last sweeping because they usually did a poor job of it. He had told defendants' officials that all the stores should be swept three or four times a day because the parking lots were poorly kept and people tracked in sand which would cut into the floor and ruin the waxing job. He had griped to the store management several times about the sweeping but "it didn't do any good". He had worked for other stores in the Wichita area where floors were swept more frequently and were better kept than defendants; these stores were open for shorter hours than defendants.

Mr. Steele and his partners arrived at the subject store sometime during the early morning hours of the day plaintiff fell. They did not wax the floor at that time. They would have swept the floor if

needed, then they mopped, scrubbed and buffed. One of the partners operated a convertomatic scrub machine which used a soap and water solution over the floor and picked up water and debris by vacuum suction. Mr. Steele followed, mopping up excess water. The floor was then buffed. Mr. Steel carried a putty knife to scrape up gum that was stuck on the floor which gum would then be placed in a sack carried for that purpose. The floor was a light off-white color and was "horrible for showing spots". Because of the color of the floor he or his partners would have seen the gum if it were out in the aisle during the early morning hours of February 19 because they were watching the floor while they worked and the gum "would be just like a fly in buttermilk, sir, you'd see it". There was no space under the frozen food lockers bordering the aisle where debris could collect and they could buff close to the lockers. The first time the store would have needed sweeping after it opened that day would have depended upon customer traffic. After plaintiff had fallen the butcher had told him about it and the witness was surprised because when they had finished cleaning the floor earlier that morning "it was a beautiful floor". Bread and milk deliveries are made to the store between 6:00 and 9:00 a. m. The gum could have been brought in on one of the delivery cases or it could have come from a customer but this was only a guess as the witness had no information as to how the gum got on the floor. If anyone cleaned the store's parking lot it was done infrequently.

By deposition a Mr. Hill, a chemical engineer and part owner of a testing laboratory, testified for plaintiff. On July 23, 1968, he received the piece of gum in question and performed extensive analysis and tests upon it. These included photo-optical examination performed under a metallurgical microscope with a camera attached so that a specimen sliced from the gum could be observed and photographed; a durometer hardness test, which measures relative hardness of a semi-solid material; a coefficient of friction test with the gum and a piece of buff vinyl tile; a chemical test to determine the per cent by weight of sugar content in the gum, and a taste and odor test. He described in detail the performance and results of these tests. After exposing other pieces of gum to sunlight and dehydration for two weeks he was unable to produce a piece with the same characteristics as the one he had received. The bottom or more flat part of the gum had a small zone of diffused soil. The piece contained four color zones. The top part had soil particles to

an unspecified depth and a small bit of string and hair were impressed in it. Both sides had what appeared to be oily stains. By reason of its folds the witness believed the gum had originally been placed somewhere other than on the floor after it had been chewed and, because of the accumulated surface dirt, he opined it had been on the floor some time. However, since the gum was already hard when placed on the floor the surface dirt could have accumulated before the time it was on the floor. Some of the dirt could have come from the plaintiff stepping on it but to what extent he could not as an expert say. Crystallization, oxidation and dehydration of the gum had occurred before the plaintiff stepped on it. The witness had never before tested a piece of gum.

We have frequently discussed the function of a motion for directed verdict. It may not be sustained unless the evidence is insufficient to support a verdict for the party against whom it is directed. In considering its propriety the evidence, and all inferences that may reasonably be drawn therefrom, must be considered in the light most favorable to that party (*Fox v. Massey-Ferguson, Inc.*, 206 Kan. 97, 476 P. 2d 646).

And we have often stated the duty of a proprietor toward a business invitee. He is not an insurer of the safety of his business invitee and the mere fact the latter slips and falls upon foreign material present on the floor of a retail establishment does not raise an inference of negligence (*Relahan v. F. W. Woolworth Co.*, 145 Kan. 884, 67 P. 2d 538).

In *Knowles v. Klase*, 204 Kan. 156, 460 P. 2d 444, we iterated these guidelines:

"A proprietor must use ordinary care to keep those portions of the premises which can be expected to be used by business invitees in a reasonably safe condition. If an unsafe condition is created by the proprietor or those for whom he is responsible, or if it is traceable to their actions, proof of notice of the condition is unnecessary. When a dangerous condition is neither created by the proprietor or those for whom he is responsible, nor traceable to their actions, proof of negligence with respect to a floor condition requires some showing they had actual or constructive notice of the dangerous condition. A proprietor may be charged with constructive notice of the condition if the condition existed for such length of time that the proprietor, his agents or employees should have known of it in the exercise of ordinary care." (p. 157.)

Our recent case of *Elrod v. Walls, Inc.*, 205 Kan. 808, 473 P. 2d 12, involved a slip and fall in a supermarket. Plaintiff there fell on a lettuce leaf in a produce aisle in which other debris was observable.

The condition of the lettuce leaf was variously described in such a manner as to indicate the length of time it had been on the floor. In affirming recovery for the plaintiff we emphasized the duty of a proprietor engaged in a particular type of selling thus:

"When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor and if the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate.

"Vigilance of a storekeeper in keeping his floor clean must be commensurate with the risk involved." (Syl. ¶¶ 4, 5.)

As to probative value to be derived from the condition of the material upon which the plaintiff slipped, we stated:

"This court has recognized the rule that the condition of a lettuce leaf immediately after it was slipped upon was of probative value in determining the length of time it was on the floor of the store if the evidence tends to show the condition of the lettuce as it existed before being stepped on." (Syl. ¶ 6.)

Plaintiff strenuously argues she made out a prima facie case of liability which should have been submitted to the jury for its determination. She emphasizes the testimony regarding defendants' cleaning practices, that the offending piece of gum was dark on top and light on the bottom, it was hard and of some age, it had dirt and debris on its top side, defendants' parking lot was poorly kept and their employees did a poor job of sweeping the last time before closing. Giving these items full weight there still was no evidence the piece of gum had been on the floor any length of time before plaintiff fell nor was there any showing defendants had knowledge of its presence, either actual or constructive, prior to the fall. Plaintiff stresses the opinion of her expert that the gum had been on the floor for some length of time. The reason given by him for this statement was the accumulation of dirt on the gum's top surface. When the conclusion is analyzed along with the evidence it becomes apparent the opinion was based on mere conjecture and speculation. The source of the soiling or discoloration was never connected with length of time on the supermarket floor, nor for that matter with presence on the floor at all. The testimony was that the gum had initially been placed somewhere else and before the expert's opinion would have validity, it would have to be assumed the soiling came from the floor—a fact neither shown nor legitimately to be inferred. Concededly, under the evidence, the soiling could as well have come from other sources. We simply are unable to derive probative

value from the condition of the piece of gum pertaining to its length of time on the floor. Nor was there evidence of other debris on the floor so as to cast light on the length of time since it had been swept that particular day.

Mere surmise or conjecture is insufficient to support a cause of action (*Springfield Tent & Awning Co. v. Rice*, 202 Kan. 234, 447 P. 2d 833). Plaintiff's evidence would not have supported a verdict in her favor, hence the trial court correctly sustained defendants' motion for directed verdict.

Judgment affirmed.

APPROVED BY THE COURT.

FATZER and O'CONNOR, J. J., dissent.