No. 64,340

JACOB ANDERSON, *Appellant*, v. RANDY SCHEFFLER, *et al.*,
*Appellees.*

(811 P.2d 1125)

Opinion filed May 24, 1991.

*William H. Pickett,* of William H. Pickett, P.C., of Kansas City, Missouri,
argued the cause, and *David T. Greis,* of the same firm, and *Michael E.*

*Callen,* of Callen, Sexton & Shelor, of Kansas City, Kansas, and *Nicholas L. Swischer,* of Nevada, Missouri, were with him on the briefs for appellant.

*Bruce Keplinger,* of Payne & Jones, Chartered, of Overland Park, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is a personal injury action. Jacob Anderson appeals from the trial court's grant of a partial directed verdict in favor of Randy Scheffler and Industrial Bearing & Transmission Company.

This case was before this court once before, and the underlying facts were stated therein. *Anderson v. Scheffler,* 242 Kan. 857, 752 P.2d 667 (1988). For convenience, we again summarize them. On February 2, 1982, Jacob Anderson and his brother James delivered a load of poultry meal to Badger By-Products Company (Badger) in Wyandotte County, Kansas, a plant owned by Beatrice Companies, Inc., (Beatrice) a Delaware corporation. James backed the hopper trailer over an underground auger pit and began to unload the meal. From the top of the trailer, Jacob used a pole to push the meal through an opening at the bottom of the trailer. When he finished, Jacob descended from the trailer and walked across a grate covering a second auger at the rear of the trailer. Jacob's foot slipped between the bars of the safety grate and his foot and leg plunged into the auger. His leg was severed above the knee. 242 Kan. at 857-58.

Jacob, a Missouri resident, filed suit in Wyandotte County District Court against Badger. The suit was removed to federal district court and amended to include as defendants Beatrice; Conveyors, Inc., (Conveyors) the auger manufacturer; and Arthur J. Gallagher & Co. (Gallagher), supervisor of hazardous conditions at Badger. A motion to join Industrial Bearing & Transmission Company, Inc., (IBT) supplier of the auger, was denied because it would destroy diversity. 242 Kan. at 858-59.

Jacob settled with Badger, Beatrice, and Conveyors. 242 Kan. at 859. Summary judgment was granted to Gallagher based on Jacob's failure to establish that Gallagher owed a duty to him under Restatement (Second) of Torts § 324A (1965).

Jacob and James filed a second suit in Wyandotte County District Court against IBT and its employee Randy Scheffler. Schef-

fler had accepted the order from Badger for the auger. The district court granted summary judgment in favor of IBT and Scheffler. Upon appeal, we determined summary judgment of Jacob's claim was premature and remanded the case for trial. 242 Kan. at 859-60, 866.

At trial, Jacob established that Badger's plant manager, Philip Rogers, contacted Scheffler concerning the implementation of a new underground conveyor system. Scheffler's deposition, read into evidence, indicated that Rogers called and requested 24 feet of 12-inch screw conveyor to put underground. Rogers indicated he had a motor for the conveyor system but needed the drives to go along with the rest of the system. Rogers wanted a system that could transport 40,000 pounds of material per hour, but left computation of the necessary variable drives to Scheffler's expertise. In his deposition, Scheffler admitted he knew a grate was necessary to protect people from the auger and that a safety hazard existed without some kind of covering. Nevertheless, he did not order a grate along with the other component parts of the conveyor system because it was not a part of the conveyor system IBT sold. Finally, Scheffler's deposition established that Rogers had asked Scheffler about the strength of metal needed for a guardrail over the floor auger. In response, Scheffler advised Rogers to obtain professional help from someone knowledgeable about grates.

Scheffler conceded upon cross-examination that he gave Rogers advice on how to improve the movement of a portable auger. Jacob's expert witnesses testified that Scheffler undertook to provide engineering services when he designed and provided the component parts necessary to produce a specific capacity conveyor system. In the experts' opinions, Scheffler failed to exercise the standard of care of a reasonable engineer because he should have known an underground conveyor could not be safely designed without a grate and because he failed to warn Badger of the system's dangerous condition without a grate.

At the close of Jacob's evidence, IBT and Scheffler sought a directed verdict on the issue of liability. The trial court determined sufficient evidence was presented for the jury to find Scheffler had failed to exercise reasonable care and that he undertook

a duty in designing the conveyor system. Thus, the motion for directed verdict was overruled.

Scheffler's trial testimony established that Rogers did not request a grate and Scheffler did not recommend one because Rogers routinely assembled his own parts. Scheffler also stated he had never ordered, designed, or installed a grate because it was not a part of the conveyor system.

Philip Rogers testified he placed an order with IBT for a screw conveyor and trough, and when the parts arrived he installed the conveyor system without assistance from IBT. Rogers also designed and installed a grate to cover the auger, but because poultry meal bridged on the grate and would not pass through it, he modified the grate to allow passage. Rogers stated he designed steel plates to cover the grate when the auger was not in use and informed Badger employees to keep the auger covered.

Other evidence established that Badger was a sophisticated customer. Several IBT conveyor salesmen indicated they had never sold, designed, or ordered a safety grate to cover an auger. Scheffler's expert witness testified that Scheffler did not perform engineering services and compared his work to purchasing groceries from a list.

Scheffler and IBT renewed their motions for a directed verdict at the close of all the evidence. The trial court declined to rule on the issue at that point. However, the trial court refused to instruct on Jacob's proposed instruction following Restatement (Second) of Torts § 324A. The trial court found there was sufficient evidence to establish that Scheffler had a duty to provide an adequate warning to the buyer. The trial court further ruled, however, that there was insufficient evidence to establish that Scheffler undertook to render services which he should have recognized as necessary for the protection of third persons. Therefore, the court granted Scheffler's motion for directed verdict on the issue of § 324A tort liability but allowed the jury to consider liability based upon the failure to warn. The jury attributed 100% fault to Badger and assessed damages at $4,979,112.20. Jacob Anderson appeals.

## I

Jacob contends the trial court erred in granting a directed

verdict to IBT and Scheffler on the issue of liability under § 324A. He argues sufficient evidence was presented to allow recovery on this theory of liability.

In ruling on a directed verdict, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence the motion must be denied and the matter submitted to the jury. *Wozniak v. Lipoff,* 242 Kan. 583, Syl. ¶ 1, 750 P.2d 971 (1988); *Carter v. Food Center, Inc.,* 207 Kan. 332, 335, 485 P.2d 306 (1971). The same rule applies when appellate review is sought on a motion for directed verdict. *Holley v. Allen Drilling Co.,* 241 Kan. 707, 710, 740 P.2d 1077 (1987).

Restatement (Second) of Torts § 324A provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

This court adopted the theory of liability espoused in § 324A in *Schmeck v. City of Shawnee,* 232 Kan. 11, 651 P.2d 585 (1982), and has considered the issue on numerous occasions. See *Meyers v. Grubaugh,* 242 Kan. 716, 750 P.2d 1031 (1988); *Fudge v. City of Kansas City,* 239 Kan. 369, 720 P.2d 1093 (1986); *Cansler v. State,* 234 Kan. 554, 675 P.2d 57 (1984); *Ingram v. Howard-Needles-Tammen & Bergendoff,* 234 Kan. 289, 672 P.2d 1083 (1983).

Jacob asserts Scheffler undertook to render engineering and design services to Badger and should have recognized a safety grate was necessary for the protection of third persons using the conveyor system, including himself. Jacob alleges Scheffler's failure to order a safety grate was a failure to exercise reasonable care, which increased the risk of harm to third persons. Jacob also asserts Scheffler participated in creating the conveyor system

and thereby undertook to perform a duty owed by Badger to create a safe conveyor system and to warn customers of its dangers.

The threshold requirement for application of § 324A is that the defendant must undertake, gratuitously or for consideration, to render services to another. *Gooch v. Bethel A.M.E. Church,* 246 Kan. 663, 669, 792 P.2d 993 (1990). In order to meet this requirement, the defendant must assume an obligation or intend to render services for the benefit of another, and the person to whom such actions are directed must accept such services in lieu of, or in addition to, such person's obligation to perform services. 246 Kan. at 674-76. Thus, a duty is owed to third persons by one who undertakes to render services to another and is then negligent in performing those services. However, one who does not assume an obligation to render services does not owe a duty to third persons. *McGee v. Chalfant,* 248 Kan. 434, Syl. ¶ 6, 806 P.2d 980 (1991).

The issue we address is whether Scheffler undertook to render engineering or design services necessary to protect third persons.

The evidence viewed in the light most favorable to Jacob Anderson establishes that Rogers, Badger's plant manager, placed an order with Scheffler for a specific conveyor system. Rogers ordered 24 feet of 12-inch screw conveyor with the capacity to move 40,000 pounds of material per hour. Scheffler viewed the location of the conveyor system and made a sketch for future reference. Before ordering the conveyor system, Scheffler had to compute the proper horsepower required for the system and called the conveyor manufacturer to get a recommendation. There was some evidence Scheffler may have considered alternative ideas, such as a tapering screw or conveyor belt, but Scheffler denied these ideas pertained to Badger.

In addition, Scheffler knew Rogers intended to install the auger and conveyor system underground and that something was needed to cover the auger. Nevertheless, he did not advise Rogers to use a grate and did not order one because he did not consider a grate part of the conveyor system. Finally, the evidence shows that Rogers asked Scheffler about a safety grate, but Scheffler recommended that Rogers seek professional services in designing or building a grate.

Examination of the facts leads us to conclude Scheffler did not undertake to render engineering services to Badger involving a grate. Badger did not request a safety grate in its very specific order for a certain type of conveyor system and Scheffler did not order one. Although Scheffler did calculate the necessary horsepower for Badger's system he did not design the system; rather, he merely ordered the component parts requested by Badger. There is no evidence Scheffler assumed the obligation of designing a safe conveyor system, nor did he help install the system. Thus, although Scheffler knew a safety grate was necessary, he did not undertake the duty to provide one. Therefore, Scheffler cannot be held liable for a task he did not agree to assume, and we hold Scheffler did not owe a duty of care to Jacob Anderson. The trial court did not err in granting the directed verdict and refusing to instruct the jury on a theory of liability based upon § 324A.

## II

In light of the foregoing conclusion, we need not address Jacob's argument that the trial court erred in instructing on the other theory of liability concerning Scheffler's failure to warn Badger about the dangers of an unprotected auger since he assumed no duty with regard to the protective grate.

## III

Jacob next contends the trial court erred in allowing hearsay testimony into evidence. During direct examination of Badger's assistant manager, Scheffler's attorney asked if he had ever heard of an incident at the plant in which a particular Badger employee's foot slipped through the bars of the grate involved in the present case. The assistant manager acknowledged that he had learned of the incident, although he could not remember if he learned about it before or after Jacob's accident.

Jacob's argument is without merit. No objection to the testimony was raised at trial. The erroneous admission of evidence may not be raised as an issue on appeal unless there appears of record a timely objection so stated as to make clear the specific ground of the objection. K.S.A. 60-404. *State v. Wilson*, 247 Kan. 87, 98, 795 P.2d 336 (1990); *State v. Garcia*, 233 Kan. 589, 608, 664 P.2d 1343 (1983).

The judgment of the district court is affirmed.