No. 68,163

STATE OF KANSAS, *Appellee*, v. DEMENTRIUS TONEY, *Appellant*.

(862 P.2d 350)

Opinion filed October 29, 1993.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Debra S. Byrd*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Dementrius Toney appeals his jury trial convictions of first-degree murder (K.S.A. 1992 Supp. 21-3401) and two counts of unlawful possession of a firearm (K.S.A. 1992 Supp. 21-4204).

For his first issue, defendant contends the trial court abused its discretion in allowing the State to present evidence concerning gang membership and gang behavior.

At about 6:15 p.m. on the evening of August 23, 1991, 15-year-old Tommy O'Neal was riding his bicycle on Piatt Street in Wichita. An automobile was observed following him. Very shortly thereafter, the boy was observed running in the opposite direction, and he was crying. The same automobile reappeared and was observed to stop. A black man, later identified as the defendant, was seen to leave the front passenger's seat of the vehicle and run after Tommy, displaying a gun as he pursued. The witness lost sight of the two running individuals after they turned a corner. The witness heard shots from the area a second or two after the running defendant turned the corner. Tommy's body was found in a residential yard. He had been shot three times by a .38 caliber gun: in the heart, in the back, and in the head. The forensic expert, Dr. William Eckert, was of the opinion that the head shot was the final shot fired and that the victim was on the ground when it was fired.

Police investigating the crime were confronted with what appeared to be a premeditated killing by an unknown assailant with no apparent motive. The following day, defendant was arrested, as a result of an unrelated incident (discussed in a later issue), in possession of the gun which was later discovered to have been used to kill Tommy.

The State proceeded to trial on the theory that the killing was gang related. It had evidence that a few days before the killing (on August 17 or 18), Tommy had been confronted by defendant (age 16) and a group of associates at a Wichita shopping center. The group threatened to kill Tommy. Defendant was heard to say, "Yeah, nigger, tell them it was Meechy." Meechy was defendant's nickname. The group poked and hit at Tommy, but he got away with the aid of a friend. During the altercation, reference was made to a prior incident where Tommy was said to have been in a car at a time when someone else in the car had pulled a gun on one of the group assaulting Tommy. It could be inferred the mall incident was in retaliation for the earlier incident.

At trial, evidence was introduced that defendant was a member of the Insane Crips gang, and the Crips gang members believed

Tommy was either a member of the rival gang or a "wannabe" of that gang. An expert on gang behavior testified "wannabe" refers to an individual who hangs around a gang with a desire to be admitted into membership. The expert also testified how a gang retaliates for slights or threats by another gang by injury to a rival gang member or one of its "wannabes." There was also evidence introduced that the victim, on occasion, wore Insane Crips colors. Presumably, this was perceived as mixed allegiance on Tommy's part and could have been a factor in the slaying of Tommy. The State's theory was that defendant's motive was retribution for an infraction on Tommy's part of the complex code of conduct under which gangs operate. Sufficient evidence was admitted to support such a conclusion.

Defendant sought to exclude evidence of his gang membership in a motion in limine and expanded this to include all evidence generally related to gangs by objection at trial.

The issue before us is whether admission of such gang evidence constituted a breach of judicial discretion.

Defendant contends evidence of defendant's gang membership and gang conduct was so prejudicial that such consideration outweighed any probative value such evidence may have had. A trial judge has discretion to exclude evidence when its probative value is outweighed by its prejudicial effect on the jury. *State v. Martin,* 237 Kan. 285, Syl. ¶ 1, 699 P.2d 486 (1985). Thus, defendant argues that it was an abuse of judicial discretion not to exclude the gang-related evidence. We do not agree.

The complained-of evidence all went to the motive for the killing of Tommy by defendant. A similar issue was raised in *State v. Tran,* 252 Kan. 494, 505, 847 P.2d 680 (1993), wherein we stated:

"<u>Motive</u>

"The State argues that evidence of gang membership was relevant to establish Hieu's motive for the crime. Following the fight inside the skating rink, Corby Turner heard a group of three to five Vietnamese males talking about the incident. Turner heard the people in the group say 'they were gonna get even and they knew how they were gonna do it.' According to the State, Turner's conversation established a link between the fight in the skating rink and the fight in the parking lot that lead to Toan's death. The motivation or desire to 'get even' with the Trans, who were involved in the arrest of Jimmy Nguyen, a member of the Local Boys, led to the confron-

tation in the parking lot. Hieu was a participant in the fight in the parking lot. Hieu made sure the gang retaliated with the Trans when he shot Toan in the back of the head.

"Officer Carey testified that if someone got a member of the gang in trouble, the gang would retaliate. Absent evidence of gang affiliation, the jury would wonder why Hieu felt the need to get even with the Tran brothers. Again, evidence of gang affiliation established an alliance among Jimmy, who started the initial fight inside the skating rink; Kevin, who started the fight in the parking lot; and Hieu, who fired the shot that killed Toan. Without evidence of gang affiliation, the State's attempt to establish a motive for the crime would have been impeded.

. "The trial court did not abuse its discretion when it allowed the State to present relevant evidence of gang membership to establish Hieu's motivation for the crime. Relevant evidence is evidence 'having any tendency in reason to prove any material fact.' K.S.A. 60-401(b).

"The motive concept is similar to the concept adopted by the United States Supreme Court in [*United States v. Abel*, 469 U.S. 45, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984),] that gang evidence may be admitted to prove bias. 469 U.S. at 49. The admission of evidence to prove motive is also consistent with one of the conclusions within the University of Chicago study cited by Hieu. The study notes: 'The definition of a gang incident should be restrictive based on gang function, motivation or particular circumstances, not gang membership alone. A gang incident therefore should be any illegal act which arises out of gang motivation or gang-related circumstances.' Spergel, Youth Gangs [Problem and Response: A Review of the Literature, Part 1, National Youth Gang Suppression and Intervention Project, Office of Juvenile Justice and Delinquency Prevention, U.S. Department of Justice, and School of Social Service Administration, University of Chicago (April 1990)] at 292."

We note that the trial court gave the following limiting instruction in the case before us:

. "Evidence has been admitted tending to prove that Dementrius Toney is a member of the Insane Crips. This evidence may be considered solely for the purpose of proving his motive."

The admissibility of evidence is governed by its relevancy to the issue in question. *State v. Reynolds*, 230 Kan. 532, Syl. ¶ 4, 639 P.2d 461 (1982). Relevant evidence is evidence "having any tendency in reason to prove any material fact." K.S.A. 60-401(b). The exclusion of evidence is within the discretion of the trial court. *State v. Reynolds*, 230 Kan. at 536.

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take

the view adopted by the trial court. *Tuley v. Kansas Power & Light Co.*, 252 Kan. 205, 217, 843 P.2d 248 (1992).

The complained-of evidence was clearly relevant to the issue of the defendant's motive for the murder of the victim. Its exclusion would have thwarted the State's effort to establish motive herein. In a murder trial, evidence of a defendant's motive for the premeditated killing of the victim is always prejudicial to the defendant in the sense it increases the chances of conviction.

We find no error or abuse of judicial discretion in the trial court's admission of the complained-of evidence.

For his second issue, defendant contends the trial court erred in denying his motion to suppress evidence and statements arising from the stop of a vehicle. Defendant contends police officers lacked probable cause to stop the vehicle.

The pertinent facts and circumstances are as follows. On August 24, 1991, at about 6:00 p.m., Officer Norton radioed that he was giving chase to a stolen moped in the area of Central and Ash. Other officers proceeded to the area. Norton continued to advise by radio of his perception of events. He stated the black male operating the moped had jumped off the vehicle and was running. The officer indicated he had previously seen the moped's operator near a yellow two-door Cadillac and that the operator was now in the Cadillac which was leaving the scene with four or five black males inside. Officers hearing the communication and approaching the area saw a yellow two-door Cadillac with a number of black males inside leaving the scene. Officers Easter and McCormick stopped the Cadillac. As Officer Easter approached the stopped vehicle on foot, he recognized defendant as the occupant of the right front passenger's seat and saw him appear to place something under the seat. The driver was Edrick King. In the back seat were Jesse Brown, Michael Williams, Byron Brown, and Lementrius Toney (defendant's twin brother).

A .38 caliber handgun was retrieved by an officer from under the front passenger seat. Ballistics tests established this to have been the weapon which had killed Tommy O'Neal the previous day. Edrick King advised Officer Easter that the gun had been in defendant's possession when he had entered the vehicle and that defendant had placed it under the seat. Defendant was arrested at the scene for unlawful possession of a firearm, as he

had been convicted of a felony (possession of cocaine) earlier that year. The other count of unlawful possession of a firearm herein was for possession of the firearm the day previously when Tommy O'Neal was killed with the gun.

The State argues that the propriety of the car stop is not properly before us, as defendant did not object at trial to the introduction of evidence arising from the stop except on chain of custody grounds as to the gun. The State's point has merit.

When a motion to suppress evidence is denied, defendant must make a timely objection at trial, at the introduction of the evidence, specifying the ground for the objection in order to preserve the issue on appeal. K.S.A. 60-404. *Anderson v. Scheffler*, 248 Kan. 736, Syl. ¶ 5, 811 P.2d 1125 (1991); *State v. Wilson*, 247 Kan. 87, 98, 795 P.2d 336 (1990); *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979). Moreover, defendant may not object to the introduction of evidence on one ground at trial, and then assert a different objection on appeal. *State v. Skelton*, 247 Kan. 34, 44, 795 P.2d 349 (1990); *State v. Clark*, 222 Kan. 65, Syl. ¶ 6, 563 P.2d 1028 (1977); *State v. Patchett*, 203 Kan. 642, 645, 455 P.2d 580 (1969).

Even if we were to consider this issue on its merits, defendant's contention must fail.

The scope of appellate review is clear herein. If the findings of the trial court on a motion to suppress evidence are based on substantial evidence, this court on review will not substitute its view of the evidence for that of the trial court. *State v. Grissom*, 251 Kan. 851, Syl. ¶ 17, 840 P.2d 1142 (1992); *State v. Garcia*, 250 Kan. 310, Syl. ¶ 2, 827 P.2d 727 (1992); *State v. Chiles*, 226 Kan. at 144.

K.S.A. 1992 Supp. 22-2402(1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

The officer making the stop must be able to articulate the basis for his reasonable suspicion. What is reasonable is based on the totality of circumstances and is viewed in terms as understood by those versed in the field of law enforcement. *State v. McKeown*, 249 Kan. 506, 511, 819 P.2d 644 (1991); *State v. Keene*,

8 Kan. App. 2d 88, 90, 650 P.2d 716, *rev. denied* 232 Kan. 876 (1982), *cert. denied* 459 U.S. 1217 (1983). It is clear that the knowledge of one police officer is imputed to fellow officers. *State v. Niblock*, 230 Kan. 156, 161, 631 P.2d 661 (1981).

Under the totality of the circumstances herein, the district court's determination that the police had probable cause to stop the Cadillac in question is supported by substantial evidence.

For his third issue, defendant contends the trial court erroneously admitted hearsay statements of Edrick King.

The complained-of statements occurred at the scene of the car stop and concern King's statements relative to defendant's possession of the gun and his placement of the same under the seat. Additional facts need to be set forth relative to this issue.

At the time of the stop, Officer Easter took charge of defendant, and Officer McCormick dealt with the driver, Edrick King. A check of police records revealed that King possibly had city arrest warrants against him. King was handcuffed and placed in the officer's vehicle. King refused a request to search the vehicle.

Defendant was patted down by Officer Easter. No weapons were found, but a bulge with the feel of a beer or pop can was felt on his person. Defendant was later seen to place an object onto the front seat of the Cadillac. The object was retrieved and found to be a can of a cereal malt beverage. As Officer Easter knew defendant to be 16 years of age, his possession thereof was an offense, and defendant was arrested therefor. The gun was retrieved from under the seat. A check of the serial number was made and Officer Easter was advised the gun had been reported stolen. The gun had been reported stolen by its owner, Regina Lynn Randall, on August 14, 1991. She had purchased the gun a week earlier.

Officer McCormick advised Edrick King that a gun had been found in the vehicle. King denied ownership. King asked what defendant had said about him. When told defendant had stated the gun was already in the vehicle when defendant had entered, King told the officer that he was not going to "take the fall" for defendant and that defendant brought the gun into the vehicle and had placed it under the seat. The officer stated King appeared scared at this time.

·Sometime prior to trial, King was shot to death. The State sought to introduce King's statements through the testimony of Officer McCormick under authority of K.S.A. 1992 Supp. 60-460(d)(1) and (2). The statute provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(d) . . . A statement which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, (2) while the declarant was under the stress of a nervous excitement caused by such perception or . . . ."

The trial court held a hearing outside the presence of the jury wherein Officer McCormick testified as to the conversation and was questioned by the court as to details of what he had observed of King's demeanor and what the officer knew of King's demeanor on prior occasions. The trial court took the matter under advisement. The trial court ultimately permitted Officer McCormick to testify as to what King told him. The court stated its rationale as follows:

"The Court has reviewed all of the legal authorities that have been offered on both sides of this matter. The Court has reviewed the statute and the case law and the arguments that the parties have presented. First of all, let me find that Edrick King is unavailable as a declarant with respect to the statements which he made on August the 24th, 1991. The State has assured the Court that Mr. King has died after that incident and is not available for testimony because of his death. The exception which the State argues applies here is the res gestae exception, and I thought it was helpful to review the case—the Supreme Court case called *Idaho vs. Wright*[, 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990)]; and in that opinion the Supreme Court observes that reliability of a statement by an out-of-court declarant can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. Res gestae is an historical exception to the hearsay rule. The reason that res gestae is an exception is that the statement is closely connected in time to the principal occurrence and, in fact, forms a part of the principal occurrence, here the discovery of a .380 semiautomatic in the vehicle which was driven by Edrick King on August 24th, 1991.

"I find that the statement that was made was made by Mr. King immediately after the discovery of the .380 semiautomatic weapon. The declaration was made as part of the res gestae. I think it is admissible under the circumstances because it was made as the event was transpiring. His statement was spontaneous. Even though it was a self-serving statement,

it's admissible. He consistently repeated his denial of ownership of that gun and gave an immediate explanation of the origin of the gun and attributed that to Mr. Dementrius Toney. In addition, I have the testimony of the arresting officer, McCormick, about the fact that Mr. [King] seemed scared, that he raised his voice in vehement denial that he owned the gun, and that his denials were persistent and immediate; and I believe the combination of these factors persuades me that his statement is admissible under 60-460(d)(1). I am not going to address it as an excited utterance exception under (d)(2), although I believe it would probably be admissible under that exception as well.

"Now, I find this an unusual situation because Mr. King, after reviewing the statement that was given by Ruthina Horn, [was] reputedly and alledgedly formerly a member of a gang called Insane Crips and possibly even the leader of that gang; and here we have the State of Kansas presenting to the Court as an exception to the hearsay rule a statement by an unavailable declarant who had very close ties to criminal activity in this community; and it is for this reason that there's some concern on the Court's part about some latitude that needs to be afforded to the defendant to fully explore the reputation of that declarant; and it goes to bias and motive; and I will— I want to say this out of the jury's presence—extend to Mr. Gribble [defendant's attorney] the opportunity to interrogate and cross-examine the witnesses who speak about this arrest with respect to Mr. King's reputation, also with respect to any examination of Ms. Ruthina Horn and her knowledge about Mr. King and his reputation, association with this particular organization of individuals. I believe the jury's entitled to know what there is to know about him, how he conducted himself and his contact with this entire situation."

In *State v. Bratt*, 250 Kan. 264, 824 P.2d 983 (1992), we reviewed the rules for determining when incriminating statements admissible under the hearsay rule met the requirements of the Confrontation Clause of the United States Constitution. We stated:

"[*Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 107 S. Ct. 2531 (1980),] noted the Confrontation Clause operates in two ways when determining the admissibility of hearsay statements. First, the Sixth Amendment establishes a rule of necessity. In the usual case, the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. Second, once a witness is shown to be unavailable, the witness' statement is admissible only if it bears adequate indicia of reliability. 448 U.S. at 65. Reliability can be inferred where the evidence falls within a firmly rooted hearsay exception. . . . 448 U.S. at 66." 250 Kan. at 270.

In *State v. Peterson*, 236 Kan. 821, 829, 696 P.2d 387 (1985), we discussed "res gestae" as follows:

"Res gestae is a broader concept than an exception to the hearsay rule. It actually deals with admissibility of evidence of acts or declarations before, during or after happenings of the principal event. Those acts done or declarations made before, during or after the happening of the principal occurrence may be admitted as part of the res gestae where those acts or declarations are so closely connected with the principal occurrence as to form in reality a part of the occurrence. [Citation omitted.] Res gestae includes those circumstances which are automatic and undesigned incidents of the particular litigated act, which may be separated from the act by lapse of time but are illustrative of such act. It is the whole of the transaction under investigation or being litigated and every part of it. Acts done or declarations made before, during or after the principal occurrence may be admissible as part of the res gestae to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

In *Drake v. Moore*, 184 Kan. 309, 318, 336 P.2d 807 (1959), we stated, "A great deal of room must be left to the discretion of the trial court in determining admissibility of evidence as a part of the *res gestae*."

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Lumbrera*, 252 Kan. 54, Syl. ¶ 5, 845 P.2d 609 (1992).

The trial judge observed Officer McCormick during his testimony during the hearing out of the presence of the jury and made extensive inquiry of the witness as to the circumstances existing when the statements were made, his observation as to King's demeanor at the time, and the comparison of same with prior conversations between King and the officer. The res gestae aspect involves the crime of unlawful possession of a firearm which had just occurred, not the murder of Tommy O'Neal.

We find no error or abuse of discretion in the trial court's determination that the statements should be admitted on res gestae grounds.

For his fourth issue, defendant contends the trial court abused its discretion in refusing to permit defense counsel to cross-examine Officer Easter as to statements made by the defendant after the discovery of the gun; specifically, that after he was

arrested and given his *Miranda* warning, the defendant stated, "It's not my gun. It belongs to Edrick King."

Defendant contends that if Edrick King's statements are part of the res gestae, then so are defendant's statements. The defendant takes the position that he was absolutely precluded from questioning Officer Easter as to defendant's statements about the gun. We do not read that conclusion into the court's rationale.

The court stated:

"This is a matter that has developed in the midst of trial in the midst of testimony, and there's not always a sufficient opportunity to brief it and analyze it as fully as possible; but it is the Court's impression that there is a distinct difference when it is the statement of a defendant that's being offered in the nature of an admission; and unless the defendant chooses to take the stand, and I'm not in any way compelling or coercing him to make that decision at this time, *I don't believe that his statement can be offered as res gestae on cross-examination; and I won't permit defense counsel to cross-examine Officer Easter as to this matter.*" (Emphasis supplied.)

Officer Easter had been called by the State in its case in chief. The emphasized portion of the trial court's ruling precludes defense counsel from that line of inquiry in cross-examination of the witness. Under the court's ruling, there would be nothing to preclude defendant from recalling Officer Easter as a defense witness and inquiring as to defendant's statements. It is the stage of the proceeding involved that appears to be the basis of the trial court's decision not that the testimony cannot come in on the basis of res gestae. Officer Easter was not recalled and no further effort was made to secure the admission of the testimony. The trial court may have been overly technical, but it appears that it was simply stating that the matter was being raised prematurely. At that time it was not known if defendant would be testifying. If defendant had taken the stand, the hearsay exception would not be an issue as defendant would have been available for cross-examination. The court was merely stating that defense counsel could not question the officer on this subject at this time on cross-examination in the State's case in chief.

Even if we were to conclude that the trial court's refusal to permit the cross-examination of Officer Easter as to defendant's responses to inquiries about the gun constituted an abuse of

judicial discretion, we would be dealing with harmless error at most.

Harmless error is error which does not affirmatively appear to have prejudicially affected the substantial rights of the complaining party. *State v. Getz*, 250 Kan. 560, 571, 830 P.2d 5 (1992); *State v. Peltier*, 249 Kan. 415, Syl. ¶ 4, 819 P.2d 628 (1991), *cert. denied* 120 L. Ed. 2d 875 (1992); *State v. Zamora*, 247 Kan. 684, 690, 803 P.2d 568 (1990).

There is little possibility that the excluded statements would have changed the outcome of the trial. The State had a strong case against defendant. Defendant's statements came after the officer had removed a gun from under the seat in which he was sitting. He had been arrested and given his *Miranda* warnings. Defendant had every reason to attempt to distance himself from possession of the gun at the time the statements were made, and the statements were wholly self-serving. As a convicted felon, possession of the gun was itself a felony offense whether or not it was linked to the Tommy O'Neal homicide or discovered to have been stolen.

We find no reversible error in this issue.

For his final point, defendant contends the trial court violated his constitutional right to due process when it denied his motion to suppress eyewitness identification evidence.

On appeal, defendant does not argue that the photographic lineup was unduly suggestive. In denying defendant's motion to suppress, the district court remarked on the closeness of the resemblance of the photos, including the fact that a picture of defendant's twin brother Lementrius Toney was in the group. Rather, defendant pointed to the lack of certainty in trial identification evinced by two eyewitnesses. One of the eyewitnesses, Theresa Jackson, positively identified defendant's photo but waffled on identifying defendant at the preliminary hearing. The following exchange took place at the preliminary hearing on direct examination between the prosecution and the witness:

"Q. Are you scared today to come in and testify?
"A. Yes.
"Q. Why are you scared?
"A. Because whenever he gets out, he knows my face and he might come after me.

"Q. The person that did this?

"A. Yeah, the person that shot Tommy, or they can call a gang member up and tell them to come and hunt me down. Then I would be laying in the grave."

The trial court gave the PIK Crim. 2d 52.20 eyewitness identification instruction herein.

Again, we iterate there is no claim on appeal that the photographic lineup was impermissably suggestive and in any way tainted the in-court identification of defendant. Thus, the weight to be afforded the testimony of the eyewitnesses was properly left to the jury applying the eyewitness identification instruction.

No error or abuse of discretion has been shown in the trial court's denial of defendant's pretrial motion to suppress eyewitness identification evidence.

The judgment is affirmed.