**Janet L. KIMES, Plaintiff,**

v.

**UNIFIED SCHOOL DISTRICT NO. 480, SEWARD COUNTY, STATE OF KANSAS, Defendant.**

**Civil Action No. 94–CV–1465.**

United States District Court, D. Kansas.

July 19, 1996.

John T. Moore, Coy Michael Martin, Hinkle, Eberhart & Elkouri, Wichita, KS, for plaintiff.

David G. Seely, Jordan E. Clay, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the defendant's Motion for Summary Judgment (Doc. 62).

## I. BACKGROUND

The plaintiff, Janet L. Kimes, was a student in the welding program at the Liberal Area Vocational Technical School. On October 30, 1992, at approximately 2:45 p.m., the plaintiff fell while walking through the welding shop. As she fell, she apparently grabbed onto a welder to regain her balance. A cylinder of pressurized gas detached from the welder and landed upon Ms. Kimes. The plaintiff suffered head and facial injuries as a result of the accident.

Ms. Kimes' accident occurred near the conclusion of the daily welding class while the students who had been working in the welding shop were cleaning up. Ms. Kimes had not been working in the welding shop that afternoon. The plaintiff has no memory of the facts of the accident, but last recalls being in the designated walkway of the welding shop. After her fall, however, she was lying inside the welding work area.

## II. SUMMARY JUDGMENT STANDARDS

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

### III. *DISCUSSION*

■ To recover for negligence, a plaintiff must establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that a causal connection existed between the breach and the plaintiff's injury. *Durflinger v. Artiles,* 673 P.2d 86, 91 (Kan.1983). We therefore begin our analysis with a determination of the duty owed by the defendant.

The plaintiff cites *Greider ex rel. Greider v. Shawnee Mission Unified Sch. Dist. No. 512,* 710 F.Supp. 296, 299 (D.Kan.1989), for the proposition that a school district has the duty to properly supervise students and to take reasonable steps to protect their safety. *Greider* is distinguishable from the instant case, however, in that the student in *Greider* was a behaviorly disturbed eighth grader. *Id.* at 297. The cases on which *Greider* relied, *Paulsen v. Unified Sch. Dist. No. 368,* 239 Kan. 180, 717 P.2d 1051 (1986), and *Sly v. Board of Educ.,* 213 Kan. 415, 516 P.2d 895 (1973), also involved minors.

The situation in *Nero v. Kansas State Univ.,* 253 Kan. 567, 861 P.2d 768 (1993), is more analogous to the case at bar. The supreme court held in *Nero* that the university owed a duty to use reasonable care to protect its student tenants. *Id.,* 861 P.2d at 779. Other jurisdictions have held that schools owe a duty of ordinary or reasonable care to their adult students. *See, e.g., Donnell v. California Western Sch. of Law,* 200 Cal.App.3d 715, 246 Cal.Rptr. 199, 201 (1988); *Korenak v. Curative Workshop Adult Rehabilitation Ctr.,* 71 Wis.2d 77, 237 N.W.2d 43, 45 (1976).

The duty described in *Nero* is that which an occupier of land owes to invitees who enter the property for the benefit of the inviter, or for the mutual benefit of the inviter and invitee. *See, e.g., Mozier v. Parsons,* 852 F.Supp. 925, 928 (D.Kan.1994). The occupant of premises must use ordinary care to keep the premises in a reasonably safe condition, and must warn invitees of concealed dangers of which the proprietor knows or should know. *Lyon v. Hardee's Food Sys., Inc.,* 824 P.2d 198, 204 (Kan.1992); Committee on Pattern Instructions, Kan. Judicial Council, *Pattern Instructions—Kansas [Civil]* PIK 12.02 (2d ed. 1977). The court finds that the defendant owed the plaintiff that duty which an occupier of land owes to an invitee.[1]

The plaintiff first contends that the defendant failed to maintain, in a reasonably safe condition, the floor of the welding shop. Ms. Kimes alleges that the defendant allowed an unsafe accumulation of water, welding beads, dirt, and other substances.

Neither Ms. Kimes nor any witness to her accident knows what caused her to fall. Witnesses have testified, however, as to various substances they saw near the scene of the accident. Student Roosevelt Gibbs remembered seeing a bucket of water used to cool the welding, and pieces of metal from welding on the floor. Elmer (Toby) Hale, a director at the school, testified that he saw a puddle of water about fourteen inches in diameter near where the plaintiff was lying after her fall, and welding beads near the

---

1. In *Jones v. Hansen,* 254 Kan. 499, 867 P.2d 303, 310 (1994), the Kansas Supreme Court abolished the distinction between the duty owed to invitees and licensees. Prior to *Jones,* a landowner owed a duty of reasonable care to invitees, but only a duty to refrain from willfully or wantonly injuring a licensee. *Id.* 867 P.2d at 306. Because the *Jones* court specified that its decision should apply only prospectively, however, the invitee/licensee analysis governs the facts of this case. *Id.* at 311.

accident scene. Student Daniel Juarez testified that he saw the power cord for the welder on the floor, and that the floor was probably dusty.

It is uncontroverted that the plaintiff was lying within the work area after she fell, and that the welder and/or cylinder of pressurized gas which she grabbed as she was falling were located within the work area. It is also undisputed that welding beads are generated in the ordinary course of many welding processes. The items which witnesses saw at the scene of the accident did not constitute "concealed dangers" of which the defendant had a duty to warn the plaintiff. Rather, the objects were normal components of a welding shop. The defendant did not owe the plaintiff a duty to eliminate such conditions or to warn her of them, if the conditions "were open and obvious to a person exercising ordinary attention, if the danger was not extreme and if there was a reasonable alternative way open to plaintiff to avoid the danger." *Robison v. United States,* 746 F.Supp. 1059, 1065 (D.Kan.1990) (citing *Restatement (Second) of Torts* § 343A cmt. g (1965)). Ms. Kimes had not been welding or working in the welding shop on the afternoon of the accident, and has offered no other reason for walking through the shop. Thus, the plaintiff presumably could have avoided any dangerous conditions in the work area.

We find that Ms. Kimes has failed to make a sufficient showing that any items located on the floor of the welding shop work area were concealed dangers as to which the defendant had a duty to warn. Nor has the plaintiff demonstrated that the defendant did not use ordinary care to maintain the work area in a reasonably safe condition. Ms. Kimes admits that students were taught to weld and use welding equipment in a safe manner. Furthermore, students in the welding class were cleaning the area at the time of the plaintiff's accident. The plaintiff has failed to establish that there exists a genuine issue as to whether the defendant breached any duty regarding the floor of the welding work area.

█ The plaintiff also asserts, however, that the defendant allowed an unsafe accumulation of water, welding beads, dirt, or other dangerous substances on a designated walkway within the welding shop. While the plaintiff does not remember where in the shop area her accident occurred, her last recollection prior to the incident is of walking in the designated walkway.

The only evidence which the plaintiff presents as to the condition of the walkway is that it was wet from people walking through the area. Mr. Gibbs testified that it had started to snow, and that the walkway was wet from people coming in from outside. If there was water on the walkway, this could have constituted a dangerous condition of which the defendant had a duty to warn.

█ Before a defendant may be held liable for an injury resulting from a dangerous condition, however, the plaintiff generally must show that the defendant had actual knowledge of the condition, or that the condition had existed for such a length of time that in the exercise of ordinary care the defendant should have known of it. *Knowles v. Klase,* 204 Kan. 156, 460 P.2d 444, 446 (1969); PIK [Civil] 12.04. In *Knowles,* the court found that it had been raining for four hours when the plaintiff slipped and fell, that the defendant had not mopped the floor since it began to rain, and that wet leaves had accumulated at the scene of the accident. *Knowles,* 460 P.2d at 447. There was also evidence of a skid mark leading to a leaf. *Id.* The court held that a jury might find that the moisture and leaves had caused the plaintiff to fall, and that the moisture and leaves had remained on the floor a sufficient time prior to the accident to charge the defendants with constructive notice of an unsafe condition. *Id.*

█ Ms. Kimes offers no evidence as to how long the walkway might have been wet, or that the defendant knew it was wet. Roy Hamey, a shop supervisor, testified that he was in the welding shop on the morning of the accident; the accident did not occur, however, until 2:45 p.m. Where the plaintiff fails to show that an allegedly dangerous substance had been on the floor for any length of time prior to her fall, or that the defendant had knowledge of its presence, the plaintiff cannot recover for negligence. *Carter v. Food Ctr., Inc.,* 207 Kan. 332, 485 P.2d

306, 310 (1971). The defendant is not an insurer of the safety of its invitees and the mere fact that the plaintiff slipped and fell upon foreign material on the floor does not raise an inference of negligence. *Id.* 485 P.2d at 309. *See also Hein v. Mills Bldg. Co.,* 190 Kan. 198, 372 P.2d 994, 996 (1962) (where no competent substantial evidence was adduced to show when it had started to rain or how much dampness had accumulated on the floor of defendant's building, defendant could not be charged with constructive notice of any dangerous condition).

■ Two exceptions exist, however, to the rule requiring proof of notice of a dangerous condition: (1) the dangerous condition was created or maintained by the defendant or by those for whom it was responsible, *Knowles,* 460 P.2d at 446; or (2) the "mode-of-operation" doctrine applies.

■ Ms. Kimes argues that the dangerous condition of the defendant's floor on the day of her accident was directly traceable to the defendant and its students. The plaintiff refers the court to the defendant's "good housekeeping rules" directing students to keep traffic areas free of materials and other debris.

■ We held above that the items which witnesses saw in the welding work area did not constitute concealed dangers of which the defendant had a duty to warn the plaintiff. As for the walkway, the only substance shown to be present was water which had been tracked inside. The presence of water caused by rain or snow, however, does not constitute a dangerous condition created or maintained by the defendant. *Knowles,* 460 P.2d at 447. To the extent that other invitees tracked in water, the plaintiff cites no authority for her contention that the defendant is responsible for the actions of its students. A school district is generally not liable for the acts or omissions of its pupils. Allan E. Korpela, Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for Injuries Caused by Acts of Fellow Students,* 36 A.L.R.3d 330, 339 § 3 (1971). If other students were responsible for the condition of the floor, the plaintiff must show that the school district had notice of the danger. *See Knowles,* 460 P.2d at 447 (if other business invitees caused floor to be slippery, defendant's notice of condition was necessary to establish negligence). Thus, the first exception to the rule requiring proof of notice of a dangerous condition does not apply in this case.

■ Nor may the plaintiff avail herself of the mode-of-operation doctrine as described in *Jackson v. K–Mart Corp.,* 16 Kan.App.2d 716, 828 P.2d 941 (1992), *aff'd,* 251 Kan. 700, 840 P.2d 463 (1992). The mode-of-operation rule allows a plaintiff to recover without proving the proprietor's knowledge of a dangerous condition where a patron's carelessness should be anticipated and the defendant fails to take reasonable measures to rectify the condition. 828 P.2d at 946. Kansas courts, however, have restricted application of the rule to self-service operations. *See id.* at 945. The supreme court described the principle as a "limited exception" which "allows a customer injured due to a condition inherent in the way the store is operated" to recover. 840 P.2d at 465, 470.

■ The plaintiff has not presented evidence that the defendant had actual or constructive notice of any dangerous condition in its walkway, nor has the plaintiff shown that either exception to the rule requiring notice applies in this case. Having previously determined that the items which witnesses saw in the welding work area did not constitute concealed dangers of which the defendant had a duty to warn the plaintiff, we now turn to the plaintiff's claim that the defendant failed to maintain the welder and its attached gas cylinder in accordance with manufacturer recommendations and industry standards.

The defendant has admitted that it is responsible for maintaining the school's welder; thus, the plaintiff need not prove that the defendant had actual or constructive knowledge of any dangerous condition, but only that a dangerous condition existed. *Knowles,* 460 P.2d at 446. The plaintiff has alleged numerous ways in which she believes the welding assembly was unsafe: the chain designed to secure the gas cylinder was missing, loose, inadequate, or had excessive slack; the chain was not attached to the cylinder

stabilizer, or bracket; the chain was secured with an inadequate hook; and the gas cylinder rested on an excessively large platform.

While the plaintiff asserts that such conditions violate industry standards, she has provided the court with no evidence as to what the relevant industry standards are for such equipment. The plaintiff has, however, referred the court to excerpts from the operating manual which accompanied the welder. Under sections entitled "Cylinder may explode if damaged," users are advised as follows:

> Always keep cylinders in an upright position securely chained to an undercarriage or fixed support.

> Cylinders should be located away from areas where they may be struck or subjected to physical damage.

> . . . .

> Always keep gas cylinders in an upright position and always keep chained to undercarriage or stationary support.

Under the section headed "Shielding Gas," users are instructed to "[s]et gas cylinder in rear platform" and to "[b]ook chain in place to secure cylinder to rear of welder."

The plaintiff has offered no evidence that the gas cylinder did not rest upright on its platform or was unchained at the time she fell and grabbed the welder. It is also undisputed that the welder was inside the work area, rather than the designated walkway, at the time of the accident. The plaintiff does refer the court to the testimony of Mr. Juarez, who recalled that the chain on the gas cylinder had slack in it prior to the day of Ms. Kimes' accident. The plaintiff has not, however, shown that allowing slack in the chain violated the manufacturer's recommendations or otherwise constituted a dangerous condition. In the absence of any proof that the welder and gas cylinder were in a dangerous condition at the time Ms. Kimes fell, no reasonable jury could find that the defendant failed to exercise ordinary care to keep its premises in a reasonably safe condition.

Ms. Kimes next argues that the defendant failed to provide adequate supervision of its welding students. In support of this contention, the plaintiff alleges that the defendant (1) failed to instruct or supervise students in maintaining the floor of the welding shop in a reasonably safe condition; (2) failed to instruct or supervise students in keeping equipment away from traffic areas; (3) failed to instruct or supervise students in properly securing gas cylinders to welders; and (4) failed to enforce clothing and eyewear safety requirements.

The plaintiff's claims of negligent supervision are largely derivative of her allegations that the defendant failed to use ordinary care to keep its floor and welding equipment in a reasonably safe condition. As discussed above, the plaintiff has not made a sufficient showing that the work area floor or the welder assembly was in a dangerous condition, or that the walkway floor was in a dangerous condition of which the defendant had actual or constructive notice. Hence, Ms. Kimes' claims of negligent supervision vis-a-vis the floors and the welder must fail. Because it is uncontroverted that the welder was in the work area rather than the walkway at the time of the accident, the plaintiff's allegation that the defendant failed to instruct or supervise students in keeping equipment away from traffic areas is similarly without merit.

Ms. Kimes' final allegation as to negligent supervision, that the defendant failed to enforce clothing and eyewear safety requirements, is related to the plaintiff's claim that the defendant promoted an unsupervised and unsafe activity, to wit, a Halloween party. The uncontroverted facts establish that while there was no organized party on the day of the accident, the defendant had authorized students to wear Halloween costumes.

In response to the defendant's assertion that she wore boots with high tapered heels on the day of her accident, Ms. Kimes states that she was wearing normal cowboy boots as part of her Halloween costume. The plaintiff also maintains, however, that she had worn the same boots to school on previous occasions. If the boots represented the plaintiff's ordinary footwear, Ms. Kimes cannot claim that the defendant's authorization of Halloween costumes caused her to dress in an unsafe manner. Furthermore, Mr. Hamey testified that he instructed the plaintiff that she

should not work in the shop areas while dressed in her "biker" costume of boots and sunglasses; the plaintiff admits that she had not been working in the welding shop on the afternoon of her accident, and offers no explanation for her presence in the area.

The defendant cannot be charged with personally supervising every student at all times. *See, e.g., Hunter v. Caddo Parish Sch. Bd.,* 627 So.2d 772, 774 (La.Ct.App.1993) ("Constant supervision of all pupils is not required or even possible."). Under the circumstances of this case, no reasonable jury could find that the plaintiff's injuries were caused by any failure of the defendant to enforce clothing and safety eyewear requirements.

**IT IS THEREFORE BY THE COURT ORDERED** that the defendant's Motion for Summary Judgment (Doc. 62) is granted and the clerk is directed to enter judgment in favor of the defendant.