(224 P.3d 1175)
No. 101,855

ETHAN HAUPTMAN, As Surviving Spouse and Personal Representative of THE ESTATE OF JENNIFER HAUPTMAN, Deceased, *Appellant*, v. WMC, INC., d/b/a WESLEY MEDICAL CENTER, *Appellee*, and JOHN F. and WYNEMA M. DYE, As Surviving Parents and Personal Representatives of THE ESTATE OF JONATHAN DYE, Deceased, *Appellants*, v. WMC, INC., d/b/a WESLEY MEDICAL CENTER, *Appellee*.

Opinion filed January 29, 2010.

*Scott J. Gunderson*, of Nelson Gunderson & Lacey, of Wichita, and *Jerome L. Skinner* and *Jonathan C. Bennie*, of Barron, Peck, Bennie & Schlemmer, of Cincinnati, Ohio, for appellants.

*Robert W. Cotter* and *Patrick J. Kaine*, of Dysart Taylor Lay Cotter & McMonigle, P.C., of Kansas City, Missouri, for appellee.

Before MALONE, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: These consolidated wrongful death actions are before this court for the second time. The actions stem from an air ambulance crash that occurred in February 2004 outside of the Dodge City Regional Airport. Medical crew members Jonathan Dye and Jennifer Hauptman were killed in the air ambulance accident. Both Dye and Hauptman were employees of Ballard Aviation, Inc. (Ballard), the operator of the air ambulance services. The families of Dye and Hauptman (plaintiffs/appellants) brought wrongful death actions against WMC, Inc. (defendant/appellee), doing business as Wesley Medical Center (Wesley), alleging that Wesley had failed to perform adequate oversight of Ballard's operations. In its first decision, this court reversed the trial court's judgment dismissing the appellants' petitions for failure to state a claim upon which relief may be granted and remanded the cases to the trial court.

On remand, the trial court granted summary judgment to Wesley. The trial court determined that under the principles articulated in *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), and this court's previous decision in *Dye v. WMC, Inc.*, 38 Kan. App. 2d 655, 172 P.3d 49 (2007), the appellants' claims were not viable under Kansas law because a principal owes no duty to provide a safe working environment for the employees of an independent contractor. On appeal, the appellants argue that the trial court improperly granted summary judgment to Wesley on their negligence

claims. We disagree with the appellants' argument. We determine that the appellants' negligent hiring claim is barred under the policy reasons advanced in *Dillard*. Moreover, based on the uncontroverted facts in this case, the appellants cannot prevail on their negligent supervision and negligent undertaking claims because they cannot show that Wesley maintained control over Ballard's flight operations or assumed an obligation with respect to Ballard's air ambulance services for the benefit of the decedents. As a result, we determine that the trial court properly granted summary judgment to Wesley.

The instant case is a consolidation of two wrongful death actions arising out of an air ambulance crash that occurred on February 17, 2004. The air ambulance was a Beech B90 operated by Ballard as EagleMed 4. Wesley contracted for air ambulance services with Ballard. The accident occurred en route to Dodge City Regional Airport after the delivery of a patient from Mercy Hospital of Independence, Kansas (Mercy), to Wesley. The pilot and medical crew members, Jonathan Dye, who was a medical technician, and Jennifer Hauptman, who was a registered nurse, were killed in the air ambulance accident. No patient was on board the air ambulance when the accident occurred.

In February 2006, Jonathan's parents, John F. Dye and Wynema M. Dye, and Jennifer's husband, Ethan Hauptman, brought separate wrongful death actions against Wesley and Mercy. Mercy was later dismissed from both lawsuits after the appellants and Mercy filed stipulated entries of dismissal.

The appellants' negligence claims against Wesley were identical. The appellants alleged that as a result of Wesley's contract with Ballard and on the basis of custom and usage, Wesley failed to perform adequate oversight of Ballard's operations when it knew or should have known of the following:

"a. [Ballard] maintained a pilot base and pilot employee pool that utilized pilots up to the full amount of hours permitted for flight duty time for 14 CFR Part 91 and Part 135 air operations.

"b. [Wesley] was aware that the dispatch procedures utilized by [Ballard] were new as of January 1, 2004 and the technology was new while the dispatch per-

sonnel were not qualified to act as dispatchers or trained to adequately use the equipment.

"c. [Wesley] knew or should have known that the lack of experience, training and qualification of the [Ballard] dispatchers and [Ballard] dispatch department would result in the dispatch of aircraft with pilots who were fatigued and near the limit of their permissible legal duty time.

"d. [Wesley] knew or should have known that the aircraft utilized by [Ballard], including EagleMed 4, on February 17, 2004, a Beech B90 registered as N777KU, did not utilize terrain avoidance system technology because their flight operations were a combination of Part 91 and Part 135 medical service operations.

"e. [Wesley] knew or should have known that fatigue and pilot duty hour considerations were so severe at [Ballard] that medical personnel onboard aircraft flights were known to handle aircraft flight duties and responsibilities in order to provide relief for fatigued pilots.

"f. On February 17, 2004, [Wesley's] employees, agents and representatives witnessed the fatigue of EagleMed 4's pilot and negligently failed to warn the pilot and his passengers of the known risks of piloting an aircraft without adequate rest in a fatigued condition, a duty assumed by the defendant as a user of air ambulance services and as a party familiar with [Ballard's] operational standards."

The appellants alleged that as a result of Wesley's knowledge, contractual responsibilities, and custom and usage, Wesley owed a duty to the passengers, patients, and medical personnel onboard its air ambulance flights, including EagleMed 4 on February 17, 2004, to "exercise reasonable and thorough oversight of its business operations that related to air ambulance services and to cease air ambulance services" with Ballard "until such practices that were indicative of pilot fatigue issues were stopped." The appellants contended that as a result of Wesley's negligence and breach of duty, the decedents suffered fatal injuries.

*Motion to Dismiss*

In May 2006, Wesley moved to dismiss both lawsuits. Wesley argued that the appellants' allegations of negligence in the two lawsuits failed to state a claim because they failed to show that Wesley owed any duty to the decedents as employees of Ballard, which was an independent contractor hired by Wesley to perform air ambulance services.

In August 2006, the two lawsuits were consolidated for discovery purposes. In October 2006, the trial court granted Wesley's mo-

tions to dismiss. The trial court adopted Wesley's arguments in support of its motions to dismiss. The trial court determined that as a matter of law, the appellants had failed to state a claim for which relief could be granted.

*Court of Appeals' Decision*

The appellants appealed the trial court's decision to this court. The appellants argued that the trial court had prematurely dismissed their petitions. This court agreed with the appellants' argument. Although the appellants had suggested three possible negligence theories, this court discussed in depth only the appellants' negligent hiring theory under Restatement (Second) of Torts § 411 (1964). Determining that the appellants might be able to produce a set of facts that would entitle them to relief on their negligent hiring theory under Restatement § 411, this court reversed and remanded the case to the trial court. See *Dye*, 38 Kan. App. 2d at 662-66.

*Remand to the Trial Court*

On remand, the trial court entered a scheduling order requiring discovery to close on issues of employment on September 1, 2008. The trial court further ordered discovery on the remaining issues to close on May 29, 2009, and scheduled a formal pretrial order conference on June 11, 2009.

*Wesley's Motion for Summary Judgment*

In September 2008, Wesley moved for summary judgment on all of the appellants' claims. Wesley stated that this court had concluded in *Dye* that if the decedents were in fact Ballard's employees, the appellants' claims would not be viable. In its uncontroverted statement of facts, Wesley set out 66 separate paragraphs of facts relating to the decedents' employment status with Ballard and Ballard's practices and procedures in running its air ambulance business. Wesley maintained that based on the facts and evidence, it was clear that the appellants were employees of Ballard and, therefore, summary judgment should be entered in favor of Wesley.

*Plaintiffs' Response to Wesley's Motion for Summary Judgment*

In responding to Wesley's motion for summary judgment, the appellants contested many of Wesley's proposed uncontroverted facts and also set forth their own statement of facts supported by affidavits, documents, and deposition testimony. The appellants argued that Wesley had mischaracterized this court's ruling in *Dye* and the fact that the decedents were employees of Ballard was not dispositive of their claims. Moreover, the appellants contended that Wesley, in its motion for summary judgment, had addressed only their negligent hiring claim under Restatement § 411. The appellants maintained, however, that they had advanced several theories of liability, including Wesley's breach of federal aviation rules, negligent supervision of Ballard, failure to warn, breach of a duty of reasonable care under Restatement (Second) of Torts § 324A (1964), and negligent hiring of an independent contractor.

*Trial Court's Decision Granting Summary Judgment to Wesley*

In a written journal entry, the trial court granted Wesley's motion for summary judgment. The trial court set out its findings of fact in 14 numbered paragraphs. The trial court noted that the appellants had contested several of Wesley's proposed undisputed facts. Nevertheless, the trial court did not adopt those facts because "those issues [were] not material to the Court's decision." The trial court determined that because the parties had agreed that the decedents were in fact employees of Ballard when the accident occurred and because the decedents' employment status was the central issue of fact, the disputed issues of fact did not prevent the entry of summary judgment.

The trial court held that under the principles articulated in *Dillard* and *Dye*, none of the appellants' claims were viable under Kansas law because a principal owes no duty to provide a safe working environment for the employees of an independent contractor. Further, in specifically determining that the appellants' claims under Restatement § 411 were not viable, the trial court stated that it followed the reasoning of *Dye* that employees of an independent contractor are not third persons under Restatement § 411.

*Standards of Review*

An appellate court's standard of review in summary judgment cases is well established. When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

Summary judgment should be granted with caution in negligence actions. See *Esquivel v. Watters*, 286 Kan. 292, 296, 183 P.3d 847 (2008). "In the vast majority of cases, claims based on negligence present factual determinations for the jury, not legal questions for the court." *Elstun v. Spangles, Inc.*, 289 Kan. 754, Syl. ¶ 2, 217 P.3d 450 (2009). Summary judgment is proper in a negligence action, however, if the only questions presented are questions of law. *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007). If reasonable persons could arrive at only one conclusion, the court may decide the question as a matter of law. *Long v. Turk*, 265 Kan. 855, 865, 962 P.2d 1093 (1998).

*Appellants' Theories of Liability*

In their response to Wesley's motion for summary judgment, the plaintiffs asserted the following five possible theories of recovery under their petitions: (1) Wesley's negligent hiring of a contractor under Restatement (Second) of Torts § 411; (2) Wesley's breach of the Federal Aviation Administration (FAA) regulations; (3) Wesley's failure to warn; (4) Wesley's negligent supervision of a contractor; and (5) Wesley's breach of a duty of care under Restate-

ment (Second) of Torts § 324A. In order to determine whether the trial court properly granted summary judgment to Wesley, we will consider each of those theories and determine whether there was a genuine issue as to any material fact bearing on those theories.

### Negligence

In order to prevail on their negligence claims, the appellants must prove (1) the existence of a duty, (2) a breach of that duty, (3) injury, and (4) a causal connection between the duty breached and the injury suffered. *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, 266, 43 P.3d 799 (2002). "The general rule is that '[w]hether a duty exists is a question of law,' while the question as to '[w]hether the duty has been breached is a question of fact.' [Citation omitted.]" *Deal v. Bowman*, 286 Kan. 853, 858, 188 P.3d 941 (2008).

### Mischaracterization of This Court's Ruling in Dye

In its motion for summary judgment, Wesley mischaracterized this court's ruling in *Dye* by stating that this court "concluded that if it was determined that the decedents were, in fact, employees of Ballard Aviation, plaintiffs' claims would not be viable." As the appellants point out, however, this court discussed only the appellants' negligent hiring claims and did not discuss the appellants' other claims. Moreover, this court never definitively concluded that if the decedents were employees of Ballard, then the appellants' negligent hiring claim would be barred as a matter of law.

### a. Negligent Hiring Theory under Restatement (Second) of Torts § 411

The appellants first contend that the trial court erred in granting summary judgment on their negligent hiring claim because there were genuine issues of material fact with regard to whether an independent contractor's employee qualifies as a third person under Restatement § 411.

The Restatement (Second) of Torts § 411 sets forth the tort of an employer's negligent hiring of a contractor as follows:

"An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons."

Restatement § 411 was adopted by this court in *McDonnell v. The Music Stand, Inc.*, 20 Kan. App. 2d 287, 293, 886 P.2d 895 (1994), *rev. denied* 256 Kan. 995 (1995).

The question of whether an independent contractor's employees are "third persons" under Restatement § 411 has not been decided in Kansas. Unfortunately, the drafters of the Restatement have not clarified the issue of whether an independent contractor's employees can qualify as third persons under § 411. The Comments to Restatement § 411 provide several illustrations of where liability may lie for the employer of an independent contractor. Notably, none of the illustrations include a scenario in which the third person is an independent contractor's employee.

Interestingly, the Introductory Note to Chapter 15 of Tentative Draft No. 7 (1962) of the Restatement (Second) of Torts, which dealt with the liability of employers for the conduct of independent contractors, stated that references to "third persons" and "others" were not meant to include employees of independent contractors. Nevertheless, this Note was not included in the final draft of the Restatement (Second) of Torts. Dean Prosser explains that the language of the tentative draft was not included because the lack of uniformity among the states' workers compensation acts made the language undesirable, if not impossible, to state anything about what the liability is to employees of an independent contractor. See *Rowley v. City of Baltimore*, 305 Md. 456, 471-74 & n.9, 505 A.2d 494 (1986). Therefore, it appears that each state individually determines whether an independent contractor's employees qualify as third persons or others under the Restatement.

*This Court's Analysis in* Dye

In determining that the appellants were not third persons under Restatement § 411, the trial court relied on this court's decision in

*Dye.* As discussed previously, however, this court has never definitively concluded that an independent contractor's employees were not third persons under Restatement § 411.

Rather, in determining that the appellants had stated a valid claim for relief based on its negligent hiring theory under Restatement § 411, this court stated:

"The determination of the decedents' employment status and the exact nature of the relationship between Wesley and Ballard may well determine the outcome of these lawsuits. Depending on the decedents' employment status, there are at least three possible scenarios:

"First, if decedents were employees of Ballard as an independent contractor of Wesley, then they may be precluded from recovery. Restatement § 411 itself does not clarify if 'third persons' includes employees of the independent contractor, but it may be noted that none of the illustrations in the comments to Restatement § 411 include a scenario in which the third person is such an employee. See Restatement (Second) of Torts § 411.

"There is Kansas case law holding that an independent contractor's employees may not be considered third parties or persons in some negligence contexts. See *Dillard*, 255 Kan. at 710, 726-27 (landowner who employed independent contractor not directly liable to contractor's employee for injury sustained as a result of a breach of a nondelegable duty imposed upon the landowner by statute or ordinance, nor vicariously liable even if work being performed is of an inherently dangerous nature). Nevertheless, whether an independent contractor's employee qualifies as a third person for the purposes of Restatement § 411 seems to be a question of first impression in Kansas.

"Other courts have generally held, usually for policy reasons, that an independent contractor's employee is not a third person for the purposes of Restatement § 411. See *Lipka v. United States*, 369 F.2d 288, 292-93 (2d Cir. 1966); *Castro v. Serrata*, 145 F. Supp. 2d 835, 836-37 (S.D. Tex. 2001), *aff'd* 281 F.3d 1279 (5th Cir. 2001); *Camargo v. Tjaarda Dairy*, 25 Cal. 4th 1235, 1244-45, 108 Cal. Rptr. 2d 617, 25 P.3d 1096 (2001); *Urena v. Capano Homes, Inc.*, 901 A.2d 145, 154 (Del. Super. 2006); *Mentzer v. Ognibene*, 408 Pa. Super. 578, 586-88, 597 A.2d 604 (1991); *Chapman v. Black*, 49 Wash. App. 94, 104-05, 741 P.2d 998 (1987); but see *Sievers v. McClure*, 746 P.2d 885, 891 (Alaska 1987); *Bagley v. Insight Communications Co., L.P.*, 658 N.E.2d 584, 587-88 (Ind. 1995).

"Plaintiffs cite a New Mexico case imposing liability under Restatement § 411 on a hospital in a case with some factual similarities, *Talbott v. Roswell Hosp. Corp.*, 138 N.M. 189, 118 P.3d 194 (N.M. App. 2005). Nevertheless, *Talbott* is not applicable here for two reasons. First, it is not clear who employed the decedent in *Talbott*—the opinion states only that the decedent was 'participating' in a training exercise conducted by the air ambulance service. 138 N.M. at 196. Second, the issues in *Talbott* concern only the nature of the relationship between

the hospital and the independent contractor, not the relationship between the decedent and the others, which is the key issue here. 138 N.M. at 197.

"In *Dillard,* our Supreme Court laid out several policy reasons for its decision to limit the liability of landowners to the employees of independent contractors. 255 Kan. at 725-27. These reasons are similar to those reasons set forth by several of the courts which have addressed the same question in the context of Restatement § 411. Although our Supreme Court limited its holding in *Dillard* to the facts and theories presented in that case, the policy reasons given in that case seem applicable to Restatement § 411.

"Second, if the decedents were employees of Wesley rather than Ballard, then they may be precluded from recovery under the Kansas Workers Compensation statutes. See *Robinett v. The Haskell Co.,* 270 Kan. 95, 97, 12 P.3d 411 (2000) ('[U]nder K.S.A. 44-501(b), an employer is not liable in tort for any injury in which compensation is recoverable under the Kansas Workers Compensation Act.').

"Third, if the decedents were passengers not employed by Wesley or Ballard, then they may be able to recover as third persons under Restatement § 411. Because at least one of the previously discussed possible results may ultimately entitle plaintiffs to relief, plaintiffs' petitions should not have been dismissed for failure to state a claim." *Dye,* 38 Kan. App. 2d at 664-66.

As evidenced by its analysis, this court's statement in *Dye* that the decedents *may be precluded from recovery* if they were employees of Ballard relies heavily on *Dillard* and the policy reasons set forth in *Dillard.* Moreover, throughout its appellate brief, Wesley cites *Dillard* to support its position that the trial court property granted summary judgment and maintains that the policy reasons in *Dillard* apply with equal force in this case.

### Supreme Court's Analysis in Dillard

Dillard was a premises liability case in which our Supreme Court determined that on the facts and theories of liability advanced by the plaintiffs in that case, the landowner's duty of reasonable care did not extend to an independent contractor's employee covered by workers compensation insurance. *Dillard v. Strecker,* 255 Kan. 704, 726-72, 877 P.2d 371 (1974).

In rejecting the plaintiffs' theories of liability of breach of a nondelegable duty imposed upon the landowner by statute or ordinance and the inherently dangerous activity exception to the nonliability of a landowner, our Supreme Court in *Dillard* set forth the following policy reasons:

"(1) The landowner should not have greater liability to an employee of an independent contractor than the liability of the contractor to that employee.

"(2) The landowner should not have greater liability to the employees of an independent contractor than the landowner has to the landowner's own employees.

"(3) Liability on the part of the landowner would encourage the landowner to use the landowner's less experienced employees rather than an experienced contractor.

"(4) Employees of an independent contractor, and their dependents, are protected under the provisions of the workers compensation statutes.

"(5) Workers in inherently dangerous jobs are fully aware of the dangers involved and receive compensation accordingly.

"(6) Landowners may not have expert knowledge of inherently dangerous work, the risks involved, and methods of avoiding such risks that an independent contractor engaged in such activity possesses.

"(7) Liability on the part of the landowner would create a class of employees, those of an independent contractor, with greater rights than the employees of the landowner for doing the same work.

"(8) To allow an employee of an independent contractor covered by workers compensation to invoke the inherently dangerous activity doctrine would (a) reward landowners who, despite their own lack of expertise, choose to perform work negligently resulting in injury to workers, (b) increase the risks to innocent third parties, and (c) punish landowners who seek expert assistance in an effort to avoid liability for injury.

"(9) A landowner who engages the services of an independent contractor pays directly or indirectly for the compensation coverage when the landowner contracts with the independent contractor." 255 Kan. at 725-26.

Based on those policies, our Supreme Court held as follows:

"(1) A landowner is not liable to an employee of an independent contractor covered by workers compensation for injury sustained as a result of the breach of a nondelegable duty imposed upon the landowner by statute or ordinance.

"(2) The inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation.

"(3) Our decision is limited to the facts herein and to those instances where the injured employee of an independent contractor covered by workers compensation seeks to hold a landowner liable under the theories discussed in the opinion." 255 Kan. at 726-27.

*Kansas Decisions after* Dillard

Five months after *Dillard* was filed, our Supreme Court hinted in *McCubbin v. Walker*, 256 Kan. 276, 886 P.2d 790 (1994), that it might be inclined to broadly interpret and expand its holding in *Dillard*. Our Supreme Court first determined that the tree trimming activity that led to the plaintiff's injury under the facts of that case did not, as a matter of law, constitute an inherently dangerous activity. 256 Kan. at 297. Our Supreme Court further stated:

"In our recent case of *Dillard v. Strecker*, 255 Kan. 704, 877 P.2d 371 (1994), we held that the inherently dangerous activity exception to the nonliability of a landowner does not extend to employees of an independent contractor covered by workers compensation. [Landowner] urges us to expand our holding in *Dillard* to exclude the exception in all instances involving independent contractors and their employees. While the arguments in favor of doing so may have considerable merit, we do not deem it necessary or appropriate to consider expanding the holding of *Dillard* in this case. That issue is better left for another day when it may be directly determinative of the case then before the court." *McCubbin*, 256 Kan. at 297.

The most recent case applying *Dillard* is this court's decision in *Herrell v. National Beef Packing Co.*, 41 Kan. App. 2d 302, 202 P.3d 691, *rev. granted* October 1, 2009. In *Herrell*, the plaintiff was a subcontractor's employee who sued the landowner, alleging the landowner's negligence in creating, maintaining, and failing to warn of the dangerous condition, in failing to inspect the premises, in violating an Occupational Safety and Health Administration (OSHA) regulation, and in failing to keep the business place safe. The majority in *Herrell* held that based on the policy reasons advanced by our Supreme Court in *Dillard*, the employee was precluded from bringing her negligence claims against the landowner. See 41 Kan. App. 2d 302, Syl. ¶ 4.

In dissenting from the majority opinion in *Herrell*, Judge McAnany discussed the various policy reasons in *Dillard*. *Herrell*, 41 Kan. App. 2d at 325-36. Judge McAnany concluded that many of the policy reasons did not apply to the plaintiff employee and that aside from the OSHA claim, the plaintiff's negligence claims should not be barred. Judge McAnany stated that he "would read *Dillard* narrowly rather than broadly" and "would not extrapolate the rul-

ing in *Dillard* to facts and claims not at issue" in *Herrell*. 41 Kan. App. 2d at 336 (McAnany, J., dissenting).

### *Dillard's Application to the Present Case*

Although both *Dillard* and *Herrell* were premises liability cases involving the liability of a defendant landowner, most of the policy reasons relied on in those cases would apply equally to a case involving a defendant employer's liability. Importantly, our Supreme Court has recently granted a petition for review in *Herrell*. Thus, the extent of the *Dillard* holding and the manner in which *Dillard* has been applied by this court will be reviewed by our Supreme Court.

There is significant authority that has called into question the extent of the application of the 15-year-old *Dillard* decision and the policy reasons advanced in that case. Specifically, in analyzing the *McCubbin* decision, Professors William E. Westerbeke and Stephen R. McAllister noted that *Dillard* did not explicitly explain what role workers compensation played in characterizing the relationship between the landowner and the contractor's employee for the purpose of defining the landowner's duty:

> "If the real reason for the holding in *Dillard* was to thwart attempted circumvention of workers' compensation in order to get a common law recovery, the holding should be so phrased. Otherwise, as may have been the case in *McCubbin*, unprotected workers will be automatically excluded in cases without any opportunity to determine whether a claim against the employer of the independent contractor might be appropriate." Westerbeke & McAllister, *Survey of Kansas Tort Law: Part I*, 49 Kan. L. Rev. 1037, 1097 (2001).

Moreover, the Kansas federal district court has specifically limited *Dillard* to its facts. See *Cuiksa v. Hallmark Hall of Fame Productions, Inc.*, 252 F. Supp. 2d 1166, 1174-75 (D. Kan. 2003); *Martin v. MAPCO Ammonia Pipeline, Inc.*, 1994 WL 409591, at * 5-8 (D. Kan. 1994) (unpublished opinion). The court in *Cuiksa* held that "*Dillard* does not shield a defendant from his own negligence and cases cited in the *Dillard* decision confirm the court's decision to limit the holding to claims regarding the negligence of the subcontractor." 252 F. Supp. 2d at 1175. Further, as discussed previously, at least one judge from this court does not believe that

*Dillard* should be extended to bar a contractor's employee from suing an employer based on claims of the employer's own negligence.

Interestingly, the appellants maintain that the issue of whether an independent contractor's employee qualifies as a third person for the purposes of Restatement § 411 is extremely fact-intensive and that further discovery is needed at the trial court level before this issue can be decided. The appellants argue that "[g]iven Wesley's special intense knowledge and actual control, contractual or otherwise, over the air ambulance operation, Wesley ought to be found liable for harm caused Plaintiffs' decedents as a result of the negligent selection of a contractor under Restatement § 411."

Nevertheless, the issue of whether an independent contractor's employee qualifies as a third person for the purpose of Restatement § 411 is an issue of law. Kansas law either recognizes that an independent contractor's employee can qualify as a third person under Restatement § 411 or it does not. See *Urena v. Capano Homes, Inc.*, 930 A.2d 877, 880 (Del. 2007) (adopting majority view and holding, as matter of law, that employees of independent contractors have no claim against general contractors for negligent hiring of independent contractor); *Young v. Bob Howard Automotive, Inc.*, 52 P.3d 1045, 1052 (Okla. App. 2002) (holding as matter of law that theory of negligent hiring of independent contractor would not be applied to impose liability for injuries to independent contractor's own employees).

Until our Supreme Court hears and decides *Herrell*, the issue of whether an independent contractor's employee qualifies as a third person under Restatement § 411 is guided by the policy reasons advanced by our Supreme Court in *Dillard*. As discussed by this court in *Dye v. WMC, Inc.*, 38 Kan. App. 2d 655, 172 P.3d 49 (2007), many of the policy reasons advanced in *Dillard* are similar to those set forth by several courts that have determined that an independent contractor's employees are not "third persons" under Restatement § 411. See *Dye*, 38 Kan. App. 2d at 666. Based on the policy reasons in *Dillard*, we determine that the trial court properly decided that the appellants could not pursue a negligent hiring claim under Restatement § 411.

### Discovery on Employment Issue

At the end of their appellate brief, the appellants attempt to distinguish *Dillard* by suggesting that they might be able to produce evidence indicating more of an employer-employee relationship between Wesley and the decedents. Specifically, the appellants argue as follows:

"It is worth noting that at least one recent case under Kansas law recognizes that despite an employee's 'independent contractor' status, a party may actually be able to prove that an employer/employee relationship exists upon a finding that the employer exercises 'sufficient control and supervision over the work of the alleged employee.' Hartford Underwriters v. State of Kansas, 272 Kan. 265, 275[, 32 P.3d 1146] (2001) (The Kansas Supreme Court holding that individuals defined as independent contractors pursuant to contractual language were actually employees.). As contractual language between Ballard/EagleMed and Wesley states that Plaintiffs' decedents were 'independent contractors' of Wesley, facts relating to Wesley's actual 'control', if proven, would undoubtedly support a finding that Wesley owed a duty to Plaintiffs' decedents as a matter of law."

It seems that the appellants are arguing that with further discovery, they could presumably show that Ballard and the decedents were effectively the employees of Wesley. Nevertheless, when Wesley filed its motion for summary judgment, discovery on the issue of employment had ended. The appellants did not ask for additional time to conduct discovery on the issue of employment.

Further, in responding to Wesley's motion for summary judgment, the appellants did not create a genuine issue of material fact as to the employment issue. In its motion for summary judgment, Wesley set forth extensive facts relating to Ballard's employment of the decedents and facts concerning Ballard's independent contractor status. Moreover, the argument in Wesley's motion for summary judgment centered on the employment issue, namely, that Ballard was an independent contractor and that the decedents were employees of Ballard. Once Wesley brought forth this properly supported evidence, it was incumbent upon the appellants to bring forward evidence showing that there was a genuine issue as to Ballard's and the decedents' employment status. See K.S.A. 60-256(e). Nevertheless, the appellants failed to produce evidence that would create a genuine issue of material fact that Ballard and

the decedents were actually employees of Wesley. Although the appellants maintain that Wesley maintained actual control over the air ambulance operation, the evidence that the appellants produced in response to Wesley's summary judgment motion failed to make this showing.

Further, even if the appellants were able to create a genuine issue of fact as to whether Ballard and the decedents were employees of Wesley, their negligent hiring claim under Restatement § 411 would still likely fail. As pointed out by this court in *Dye*, if the decedents were employees of Wesley rather than Ballard, then they may be precluded from recovery under the Kansas workers compensation statutes. See *Robinett v. The Haskell Co.*, 270 Kan. 95, 97, 12 P.3d 411 (2000) ("[U]nder K.S.A. 44-501(b), an employer is not liable in tort for any injury in which compensation is recoverable under the Kansas Workers Compensation Act."); *Dye*, 38 Kan. App. 2d at 666.

### b. Breach of FAA Regulations

In their appellate brief, the appellants briefly mention a possible theory that Wesley breached FAA rules. This theory is a negligence per se theory. See *Pullen v. West*, 278 Kan. 183, 194, 92 P.3d 584 (2004) (Elements of negligence per se are: (1) a violation of a statute, ordinance, or regulation, and (2) the violation must be the cause of the resulting damages.).

Nevertheless, the appellants have made no allegations in their petitions that Wesley breached any particular FAA regulations. Moreover, the appellants have not developed any argument in their appellate brief on this theory. A point incidentally raised but not argued is deemed abandoned. *Brubaker v. Branine*, 237 Kan. 488, 490, 701 P.2d 929 (1985). Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Conley*, 287 Kan. 696, 703, 197 P.3d 837 (2008). Because no argument or citation to authority is stated by the appellants on their theory that Wesley breached FAA regulations, we determine that Wesley has abandoned that theory.

In any event, the *Dillard* court held that a nondelegable duty, such as Wesley's breach of FAA rules, extended to protection of innocent third parties, not to employees of independent contractors. 255 Kan. at 726.

### c. *Failure to Warn*

In responding to Wesley's motion for summary judgment, the appellants also stated that they were advancing a theory of liability based on Wesley's failure to warn. The appellants have not briefed this theory and, therefore, have abandoned any argument relating to this specific theory on appeal. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009) (An issue not briefed by the appellant is deemed waived or abandoned.).

### d. *Appellants' Negligent Supervision and Negligent Undertaking Theories under Restatement §§ 324A and 414*

Appellants have also argued a negligent supervision theory and a negligent undertaking theory under Restatement (Second) of Torts §§ 324A and 414. As with the appellants' negligent hiring theory under Restatement § 411, Kansas law has never determined whether those causes of action allow recovery by an independent contractor's employees.

#### *Negligent Supervision or Control*

Kansas law recognizes the theory of negligent supervision, which is a separate and distinct theory from negligent hiring and negligent retention. The theory of negligent supervision encompasses the failure to supervise and also the failure to control persons with whom the defendant has a special relationship, including the defendant's employees or individuals with dangerous propensities. See *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 331, 961 P.2d 1213 (1998).

A review of Kansas case law reveals no cases that have determined whether the relationship between an employer and an independent contractor qualifies as a special relationship in the context of a negligent supervision theory. At least one court has held that a special relationship exists between an independent contractor and contractee where the contractee retains the right to control

the contractor's work. See *CoTemp, Inc. v. Houston West Corp.*, 222 S.W.3d 487, 492 (Tex. App. 2007); see also *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356-58 (Tex. 1998) (if employer retains some control over manner in which work is done, then duty to see that independent contractor performs its work in safe manner may arise).

Similarly, Restatement (Second) of Torts § 414 (1964) imposes liability on an employer when the employer retains control over an independent contractor's work:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Comment c to Restatement § 414 outlines the application of this section as follows:

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

Although it seems that Kansas courts have never expressly adopted Restatement § 414, appellants' negligent supervision claims and their arguments concerning Wesley's control over Ballard's activities appear to be based on the previously mentioned Restatement section. It bears mentioning that this court in *Herrell* discussed the application of Restatement § 414 but concluded that there was no support for imposing liability under that section because the defendant landowner had retained no control or direction over the work resulting in the injury. 41 Kan. App. 2d at 323-24.

The Restatement does not specify whether an independent contractor's employees are included within the term "others" under § 414 of the Restatement. Nevertheless, the North Dakota Supreme

Court, citing cases from several other jurisdictions, has indicated that it is well settled that an independent contractor's employees are included within Restatement § 414:

"It appears well settled that employees of an independent contractor fall within the protection of Section 414 and that an employer of an independent contractor who retains control of part of the work owes a duty of care to the independent contractor's employees to exercise the retained control with reasonable care. *Donovan v. General Motors*, 762 F.2d 701 (8th Cir.1985); *Jamison v. A.M. Byers Co.*, 330 F.2d 657 (3rd Cir.), *cert. denied*, 379 U.S. 839, 85 S. Ct. 74, 13 L. Ed. 2d 45 (1964); *Ackerman v. Gulf Oil Corp.*, 555 F. Supp. 93 (D.N.D.1982); *Haberer v. Village of Sauget*, 158 Ill.App.3d 313, 110 Ill. Dec. 628, 511 N.E.2d 805 (1987); *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258 (1987); *Corsetti v. Stone Co.*, 396 Mass. 1, 483 N.E.2d 793 (1985); *Moloso v. State*, 644 P.2d 205 (Alaska 1982); *Gulf States Utilities Co. v. Dryden*, 735 S.W.2d 263 (Tex.App.1987); *Hammond v. Bechtel Inc.*, 606 P.2d 1269 (Alaska 1980); *Pasko v. Commonwealth Edison Co.*, 14 Ill.App.3d 481, 302 N.E.2d 642 (1973); *Weber v. Northern Illinois Gas Co.*, 10 Ill.App.3d 625, 295 N.E.2d 41 (1973). We have found no contrary cases, and we agree with the foregoing authorities that employees of an independent contractor fall within the protection of Section 414." *Madler v. McKenzie County*, 467 N.W.2d 709, 711 (N.D. 1991).

Thus, if Kansas courts were to follow the rule in those jurisdictions, a principal employer may be held liable to the employees of an independent contractor for its own negligence when it retains control of certain aspects of the work. See Restatement (Second) of Torts § 414; see also 41 Am. Jur. 2d, Independent Contractors § 28, p. 498 (2005) ("Although one who employs an independent contractor may escape liability for such contractor's negligence, the employer is nevertheless answerable for its own negligence.").

*Trial Court's Decision*

Here, the trial court relied on *Dillard* in determining that the decedents' employment status as employees of Ballard was dispositive of all of the appellants' claims. In its appellate brief, Wesley also cites to *Dillard* to support its argument that it owed no duty to supervise or monitor Ballard in providing a safe work place for Ballard's employees.

Although *Dillard* did not involve the issue of whether an independent contractor's employees may pursue a negligent supervision or negligent undertaking claim against a principal employer,

many of the policy reasons advanced by our Supreme Court in *Dillard* are readily applicable to the appellants' claims in this case. Our Supreme Court's future decision in *Herrell* will likely clarify whether the policy reasons in *Dillard* operate to bar an independent contractor's employee from pursuing a claim against the principal employer when the employee is covered by workers compensation.

### Undisputed Facts before the Trial Court

Nevertheless, even if our Supreme Court was to determine that an independent contractor's employee may pursue a negligent supervision or negligent control claim against the principal employer, the undisputed facts in this case establish that Wesley did not retain control over Ballard's operations.

We point out that "[o]rdinarily, a summary disposition of a pending case before the district court should not be granted until discovery is complete. [Citation omitted.]" *Montoy v. State*, 275 Kan. 145, 149, 62 P.3d 228 (2003). Nevertheless, "if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished. [Citation omitted.]" *Med James, Inc. v. Barnes*, 31 Kan. App. 2d 89, 96, 61 P.3d 86 (2003), *rev. denied* 275 Kan. 965. An issue of fact is genuine when it has legal controlling force as to the controlling issue. A disputed question of fact that is immaterial to the issue does not preclude summary judgment. If a disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. *Muhl v. Bohi*, 37 Kan. App. 2d 225, 229, 152 P.3d 93 (2007).

Here, as shown by the exhibits attached to Wesley's motion for summary judgment and the appellants' response to Wesley's motion for summary judgment, a substantial amount of discovery had been completed when Wesley moved for summary judgment. Specifically, depositions had been conducted of Wesley's chief medical officer, one of Wesley's employees who had previously worked in Wesley's dispatch center, and Ballard's director of operations. Moreover, the appellants had collected evidence that included the Ballard pilot's flight-and duty-time records; Wesley's critical care

transport protocol; the National Transportation Safety Board's factual report; and affidavits from Ballard's former chief pilot, a former Ballard employee whose responsibilities included attending regular meetings with Wesley personnel, and a former Ballard paramedic.

When Wesley moved for summary judgment in this case, the appellants never requested additional time under K.S.A. 60-256(b) to oppose the summary judgment motion. Further, in their appellate brief, the appellants fail to indicate how additional discovery would lead to uncovering facts that would controvert the material facts in this case.

Although Wesley moved for summary judgment before the second discovery deadline in this case had expired, the facts pertinent to the material issues in this case were uncontroverted. As discussed below, the uncontroverted facts in this case established as a matter of law that the appellants could not prevail on their negligent supervision or negligent undertaking claims.

### Wesley's Contract with Ballard

The contract between Wesley and Ballard made clear that Ballard had the responsibility to maintain direction and control over all aspects of the work to be performed; to furnish the aircraft equipment to be used in performing the work; and to retain its safety obligations in performing the contracted work.

- *Ballard maintained direction and control over all aspects of the work to be performed.*

The contract between Ballard and Wesley expressly stated that Ballard "shall have operational control of the aircraft used in the service of this Agreement, and [Ballard] shall control all aviation and related flight operations of the aircraft at all times." Moreover, within the contract, the parties further agreed that Ballard and its assigned pilots would be in command of all aircraft at all times; that no flight would commence until and unless the Ballard pilot and the director of operations was satisfied, *in their sole discretion*, that the pilot was fit, the aircraft mechanically sound and properly loaded, and the weather, landing zone, airstrip, airport, and any

other conditions necessary for a safe flight were acceptable; and that Ballard and its pilots, *in their sole discretion*, could unilaterally make any changes before or while in flight to accommodate changes in weather, air traffic, FAA directives, mechanical problems, or other matters affecting flight safety. In addition, the parties agreed that Ballard was responsible for operating all flights under the flight-time limitations and pilot-rest requirements of FAA Regulation Part 135 and the Hospital Emergency Evacuation Services Rules of the FAA regulations.

- *Ballard furnished the aircraft equipment.*

The contract between Ballard and Wesley specified that Ballard was a provider of air medical services and was an FAA-certified air carrier which operated and maintained fixed wing and rotor wing aircraft suitable for the transportation of patients requiring air medical transportation.

Under the contract, Ballard had the responsibility to furnish the aircraft equipment to transport Wesley's patients and to provide the air medical transportation services as follows:

"A. Air Medical Transportation Services

"1.   The Hospital shall utilize Contractor, under this Agreement, as its exclusive provider of fixed wing and rotor wing air medical transportation services, except where specifically requested by a patient, or where it is not reasonable to use Contractor, because of local, city or state ordinances or regulations, unavailability of the Contractor's aircraft or as otherwise provided in this Agreement.

"2.   Air medical transportation services shall be provided by Contractor for patients for whom requests have been made for transportation to Contractor by designated employees or representatives of the Hospital, and referring hospital personnel who request air transport. The Contractor shall not refuse to accept a request to provide air medical transportation because of financial reasons or insurance status of the patient with reasonable limits."

- *Ballard retained control over its safety obligations.*

Under the contract, Ballard retained control over its safety obligations by agreeing "at its own expense, to provide all employees, including pilots and mechanics, high-quality training and orientation necessary to assure the highest margins of safety." Moreover, Ballard agreed that all aircraft used for Wesley conformed to all

FAA rules, regulations, and requirements, and any applicable state regulations. In addition, as highlighted previously, Ballard assumed the responsibility to make changes to accommodate matters affecting flight safety; to make determinations concerning flight safety; and to ensure that flight-time limitations and pilot-rest requirements were in compliance with federal regulations.

Based on the plain language of the contract between Wesley and Ballard, the appellants cannot prove a vital element of their negligent supervision or control claims against Wesley: that Wesley retained control over Ballard's flight operations. Under the contract, it is clear that Ballard maintained control of its flight operations, its aircraft equipment, and its safety obligations. There is nothing to indicate that Wesley assumed a duty to furnish safe transportation of Ballard's employees, to ensure the hiring of competent pilots, or to supervise the pilots of the air ambulance. Further, Wesley neither agreed to maintain control over Ballard's flight operations nor to assume any of Ballard's obligations as an air ambulance provider. Thus, under the plain language of the contract, the appellants are unable to prove their negligent supervision claims.

### Wesley's Conduct with Ballard

Moreover, there is no evidence that Wesley retained or exercised control over the details of the work Ballard (through its agents or employees) performed. Wesley did not control Ballard's use of its airplanes. Wesley did not direct Ballard's method of picking up and delivering patients to Wesley's facility. Wesley did not monitor Ballard's flight operations. Moreover, Wesley offered no specifications to Ballard on how to perform its work.

Instead, the undisputed evidence in this case was that Ballard's flight coordinators were responsible for determining the aircraft and the flight crew that would be used for a particular flight. Ballard employees determined the number of pilots and medical crew at each base and assigned the shifts for the pilots and medical crew. Further, Ballard was responsible for hiring, supervising, and providing training to pilots and crew members.

In addition, as Wesley points out, there is no evidence that it was in control or directing the air ambulance when it crashed and killed the decedents. Wesley did not dispatch the air ambulance flight on which the decedents were flight crew members. There is no evidence that Wesley directed the return flight path of the air ambulance or dictated the base to which the air ambulance would return. As a result, Wesley was not in control of the air ambulance flight when the decedents were tragically killed, and the appellants cannot pursue a negligent supervision or control claim against Wesley.

### Negligent Undertaking under Restatement § 324A

Although not asserted at the motion to dismiss stage, the appellants argued in their response to Wesley's motion for summary judgment that Wesley breached a duty of reasonable care under Restatement (Second) of Torts § 324A (1964).

Restatement § 324A outlines a duty of reasonable care for one who undertakes to render services either gratuitously or for consideration to another as follows:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Restatement § 324A was adopted by our Supreme Court in *Schmeck v. City of Shawnee*, 232 Kan. 11, Syl. ¶ 4, 651 P.2d 585 (1982); see *Cansler v. State*, 234 Kan. 554, 566-67, 675 P.2d 57 (1984). Kansas courts have established the following principles of liability in regard to Restatement § 324A:

" '[O]ne who does not assume an obligation to render services does not owe a duty to third persons.' *Anderson v. Scheffler*, 248 Kan. 736, Syl. ¶ 3, 811 P.2d 1125 (1991).

" 'The threshold requirement for the application of the Restatement (Second) of Torts § 324A (1964) is a showing that the defendant undertook, gratuitously or for consideration, to render services to another. In order to meet this requirement, the evidence must show the defendant did more than act, but through affirmative action assumed an obligation or intended to render services for the benefit of another.

" 'A duty is owed to third persons by one who undertakes, by an affirmative act, to render aid or services to another and then is negligent in the performance of that undertaking. *McGee* [*v. Chalfant*], 248 Kan. 434, Syl. ¶¶ 5, 6[, 806 P.2d 980 (1991)].

" 'For a defendant to meet the threshold requirement of Restatement (Second) of Torts § 324A (1964), the defendant must not only take affirmative action to render services to another, but the person to whom the services are directed must accept such services in lieu of, or in addition to, such person's obligation to perform the services.' *Gooch v. Bethel A.M.E. Church*, 246 Kan. 663, Syl. ¶ 3, 792 P.2d 993 (1990)." *Calwell v. Hassan*, 21 Kan. App. 2d 729, 742, 908 P.2d 184 (1995), *rev'd on other grounds* 260 Kan. 769, 925 P.2d 422 (1996).

We note that the theories of liability under Restatement §§ 414 and 324A are analytically similar. See *Moloso v. State*, 644 P.2d 205 (Alaska 1982) (noting analytical similarity between theories of liability under Restatement §§ 414 and 324A). As with the tort of negligent supervision under Restatement § 414, Kansas law has not yet determined whether an independent contractor's employee is included as a third person and can bring a cause of action against an employer under Restatement § 324A.

Nevertheless, based on the previous reasoning, the uncontroverted evidence in this case established that Wesley did not, through affirmative action, assume an obligation or intend to render services for the benefit of Ballard's employees. Despite the significant amount of discovery obtained in this case, the appellants were unable to turn up anything indicating that Wesley had assumed any obligation over Ballard's air ambulance services. Neither through its contract with Ballard nor its interactions and conduct with Ballard had Wesley agreed to render services for the benefit of Ballard's employees. Based on the uncontroverted evidence in this case, summary judgment was properly granted to Wesley on the appellants' negligent undertaking claims under Restatement § 324A.

In conclusion, we determine that the trial court properly granted summary judgment to Wesley on the appellants' negligence claims.

Affirmed.